(No. 3281— ▬▬▬▬▬▬▬▬▬

JOHN BETTINARDI, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 13, 1939.*

MAX J. BECKER, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The complaint alleges that on the 13th day of March, 1937, John Bettinardi, the claimant, was injured by reason of an accident arising out of and in the course of claimant's employment by the State of Illinois.

The record discloses that claimant is an unmarried man with no child under sixteen years of age, and that claimant was in the employ of the respondent in the capacity of orderly

at the Illinois Research and Educational Hospital, a charitable institution maintained and operated by the State of Illinois at 1819 Polk Street, Chicago, Illinois; that he was receiving a salary of $85.00 per month, plus maintenance valued at $18.00 per month; that he had not been in such employment for one year previous to March 13, 1937, but it was stipulated that claimant's annual earnings for the purpose of computing compensation should be considered at $1,236.00. Claimant's duties consisted of emptying the patient's vessels, handling bottles containing medicine, waiting on the patients, moving beds and tables, assisting in the service of meals, collecting laundry, taking patients to the dispensary and handling oxygen and gas tanks. He also operated the elevators when the occasion required. The Research and Educational Hospital is a five-story brick building accommodating about three hundred patients and employing about seventy-five people. It is equipped with four electrically operated elevators, and the kitchen where the meals for patients and employees are prepared is equipped with knives, gas stoves, a refrigerator and electrically operated meat grinders and bread slicers. The laundry at the institution is equipped with electric washing machines, mangles and driers.

On March 13, 1937, while claimant was handling a urinal, a piece of enamel pierced the middle finger of his right hand, causing it to bleed. He immediately reported the incident to his superior, and Dr. Reynolds, a physician at the institution, examined the finger. In January, 1938, the finger bothered him and on January 4, 1938, Dr. Roberg, a physician at the institution, opened the finger and removed a small particle of enamel therefrom. The condition of the finger grew worse and on January 17, 1938, claimant was hospitalized at the institution and remained in the hospital for nine weeks.

Claimant had worked from March 13, 1937, until January 17, 1938, at his regular employment and received his regular salary. After his discharge from the hospital he received intermittent treatment at the dispensary and on May 13, 1938, was again hospitalized at the institution and a sequestrum of bone was removed from the distal phalanx of the finger. The claimant was again discharged from the hospital on May 16, 1938, and thereafter received intermittent treatment and observation at the dispensary while the wound was still draining. Subsequent to June 27, 1938, a skin graft was done on

the claimant's finger and the claimant was able to return to his regular duties November 21, 1938. The claimant did not work from January 17 to November 21, 1938, but was paid one month's salary of $85.00 in February, 1938.

All the hospitalization and medical services have been furnished by the respondent.

Dr. Arthur H. Schoenwetter was called on behalf of the claimant and testified that claimant's right middle finger was one-half inch shorter than the corresponding finger of the left hand; that claimant has lost about one-half of the distal phalanx of the finger; that the finger is flexed at a 45 degree angle and that the distal phalanx cannot be extended completely; that the finger closes only to one-half inch of the palm.

Under the Compensation Act the loss of the first phalange of the thumb or of any finger shall be considered to be equal to the loss of one-half of such thumb or finger and compensation shall be one-half of this amount; and the loss of one-half of the distal phalange of the finger constitutes the loss of the phalange. Generally speaking, compensation for temporary total incapacity is payable only for that period immediately following the accident during which the employee is totally incapacitated from work by reason of the illness attending the injury—the period of the healing process.

The record shows that the respondent had immediate notice of the accidental injury sustained by the claimant on March 13, 1937, and that claimant was paid his regular salary for non-productive time from January 17 to February 17, 1938, which constituted the payment of compensation under the case of *United Air Line* vs. *Industrial Commission,* 364 Ill. 346. No demand for compensation was therefore necessary. The claim was filed within one year from the payment of this compensation, and all the jurisdictional requirements have been complied with.

It has been stipulated that claimant's annual earnings for compensation purposes is the sum of $1,236.00, or an average weekly wage of $23.76, one-half of which equals $11.88. It appears that the claimant is entitled to the benefits of the Workmen's Compensation Act and under that Act is entitled to compensation in the sum of $207.90 (which is 50 per cent

of 35 weeks times $11.88) for the specific loss of 50 per cent of the middle finger of the right hand.

We are also of the opinion that claimant is entitled to total temporary incapacity for that period following the accident during which he was unable to work because of the effects of the injury, even though the injury did not manifest itself immediately after the accident. It is admitted that the injury was caused by the piece of enamel embedding itself in the finger. We are of the opinion that under Section 8 (b) of the Workmen's Compensation Act the Legislature did intend to provide compensation for total temporary incapacity, even though it did not follow the injury for several months. Claimant was injured on March 13, 1937, and he lost no time from his employment on account of the injury until January 17, 1938, ten months after the accident. We believe that it would be a narrow construction of the Act to say that the temporary total incapacity must immediately follow the injury, and we hold that the claimant is entitled to compensation equal to fifty per cent of his average weekly wage for the period from January 17 to November 21, 1938. The record shows that the claimant was either in the hospital or undergoing treatment with his finger still draining or submitting to a skin grafting process during this period, and that his finger was not completely healed, and consequently he did not return to work until November 21, 1938, or a period of forty-three weeks. Compensation for this period at the rate of $11.88 would amount to $510.84. He did, however, receive $85.00 for non-productive time and this should be deducted from the above amount.

Holding as we do, that claimant is under the Workmen's Compensation Act, he is entitled to $207.90 for the specific loss of the first phalange of the second finger, plus 43 weeks' temporary total incapacity at the rate of $11.88 per week or $510.84, less the one month's salary paid to claimant in the sum of $85.00, or the total sum of $633.74.

Claimant was injured on March 13, 1937. He lost no time from his employment on account of the injury until January 17, 1938, a little more than ten months after the accident. From the time he went to the hospital until he returned to work, 43 weeks had elapsed. He is entitled to receive the compensation for the specific loss of the first

phalange of the second finger and for temporary total incapacity in a lump sum for the reason that more than that amount has accumulated at $11.88 per week up to September 12, 1939, the date of this award.

An award is therefore made in favor of John Bettinardi, the claimant, in the sum of $633.74.

This award being subject to the provisions of an Act entitled "An Act making an Appropriation to Pay Compensation Claims of State Employees and providing for the Method of Payment Thereof," approved July 3, 1937 (Session Laws 1937, page 83), and being subject further to the terms of an Act entitled "An Act making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Moneys until the Expiration of the First Fiscal Quarter after the Adjournment of the next Regular Session of the General Assembly" ( Senate Bill 123, as amended), approved July 8, 1939; and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for by the foregoing Acts.