FORD MOTOR COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Elizabeth Bacon, Appellee).

First District (Industrial Commission Division)   No. 1—84—1550WC

Opinion filed January 22, 1986.

Perz & McGuire, of Chicago (Frank M. Perz and Daniel F. Capron, of counsel), for appellant.

Warsawsky, McNeal & Associates, of Chicago (John E. McNeal and Michael D. Fabing, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

The sole issue on appeal is the propriety of the Industrial Commission's award to claimant, Elizabeth Bacon, of $1,130 as penalties (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(l)), and $1,135 as attorney fees (Ill. Rev. Stat. 1981, ch. 48, par. 138.16) against Ford Motor Company for failing to pay claimant's benefits without good cause.

Claimant filed an application for adjustment of her claim under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) for injuries she sustained to her back while employed by Ford. An arbitrator awarded claimant 20$6/7$ weeks of temporary total disability, but denied her request for penalties. On review, the Commission upheld the arbitrator's award of benefits and also imposed the aforesaid penalties and attorney fees. Ford sought review of the Commission's decision in the circuit court of Cook County. Sometime thereafter, Ford voluntarily paid the temporary disability award, and the circuit court confirmed the Commission's award of penalties. Ford appeals.

Claimant's duties at Ford consisted of applying sealer to cars by using air guns attached to overhead hoses. On April 8, 1981, Bacon reached over her head for the air gun and felt a pull and sharp pain in her back. She promptly told a co-worker and then notified a supervisor. Bacon was sent to the company nurse who, after applying ice packs, returned claimant to work. The nurse also arranged to have claimant see the company doctor in a few days.

On April 13, 1981, claimant saw the company doctor, Dr. Walter McFarland, about the back pain which began on April 8. (Claimant had injured her back at work in 1979 and at home in 1980.) Dr. McFarland found petechia, small pin-point type hemorrhages, extending from the mid-thoracic region down to the upper sacrum in the midline. He gave her muscle relaxers and referred her to Dr. Kishan Chand, an orthopedic surgeon. On April 16, Dr. Chand examined claimant and, without taking X rays, diagnosed a thoracic lumbar strain. Claimant returned to Dr. McFarland on the same day and based on Dr. Chand's diagnosis, Dr. McFarland released claimant for work with some activity restrictions. Claimant's pain continued and she was placed on conditional medical leave from April 20 to May 4, 1981.

On April 27, 1981, claimant saw her personal physician, Dr. Luis P. de Melo, who arranged to hospitalize her for physical therapy and

tests. On May 6, 1981, Ford mailed claimant a notice requiring her to return to work or provide a medical report within five working days, or risk termination.

On May 8, 1981, claimant was admitted to the hospital by Dr. de Melo. On May 19, she underwent a lumbar myelogram which revealed a small centrally herniated disc. Claimant remained in traction in the hospital until May 22. The final diagnosis was incipient disc disease at the 4th lumbar space. She was told to rest in bed at home and curtail her activities.

Claimant's deadline for responding to Ford's five-day notice was May 13. She testified that about three days after entering the hospital she talked to John Hanford, Ford's workers' compensation representative. She asked what she needed to do in order to receive her disability pay and he told her to send in a letter from her doctor. She spoke to Hanford "many times" while in the hospital and after she returned home. Hanford testified that he had telephone conversations with claimant and she said she was in the hospital. At the time of the hearing, two months later, he could not recall how many conversations he had with claimant or the content of the conversations.

Gary Miller, Ford's labor relations representative, testified that on May 6, before sending the five-day notice, he went to the medical department and reviewed claimant's file to determine if it contained medical documentation establishing that she was still disabled and unable to work. Finding nothing, Miller sent out a five-day notice. He did not find or request any information about the April 8 occurrence, the examinations and treatment from Drs. McFarland and Chand, or the reason for the medical leave. When he received no reply on May 13, Miller terminated claimant as of that date. On May 14 he received Dr. de Melo's report dated May 7. The report stated that Dr. de Melo first saw claimant on April 27, that she suffered from a disability, and that she was scheduled to undergo a lumbar myelogram. A few days later claimant telephoned personnel and was told of her termination. Miller informed her that she would have to take up her problem with the union. Ford stipulated that it knew claimant was under a doctor's care.

On May 19, 1981, Dr. de Melo sent a letter to Hanford at Ford, stating that claimant had been admitted to the hospital, and that a myelogram revealed a herniated disc. The letter also stated that treatment was not completed and that the doctor did not know when she could return to work. The letter to Hanford was found in claimant's personnel file at Ford, but Hanford stated that he had never seen the letter.

Dr. McFarland testified that he had never seen the report and letter from Dr. de Melo. Dr. McFarland was asked whether stretching up about three inches to pull down a hose at the end of which was a six-pound air gun could cause a herniated disc. Dr. McFarland answered, "I wouldn't expect that, no." In response to a hypothetical question, Dr. McFarland testified that if he had seen the myelogram report, he would not have released claimant for work. Instead, he would have asked for the opinion of another orthopedic surgeon, and he would have wanted to see the radiology reports. He would not have returned her to work status with a herniated disc. After stating that the letter and report from Dr de Melo were not in claimant's medical file at Ford, Dr. McFarland said, "I don't see any reason why this would have been in personnel. This should have been in the medical file."

Karen Flowers, the personnel administrator who maintains Ford's personnel records, testified that an attending physician's report should be reviewed by personnel, then sent to the medical department to be kept in the employee's medical file. She did not know who placed the report from Dr. de Melo in the personnel file instead of in the medical file.

On June 25, 1981, claimant was examined by Dr. Oliver V. Renaud at Ford's request. His clinical and X-ray findings were normal. He stated that reaching up to pull on a hose could not herniate a disc. Dr. Renaud stated that claimant's hospital findings would have required only a 10- to 14-day recovery period. He testified that a myelogram was the proper test for diagnosing a herniated disc, and that if the disc ligaments were weakened by initial trauma, further trauma would increase the weakening.

Dr. S. P. Kaushal, an orthopedic surgeon, also examined claimant. He found several abnormalities during the clinical examination and in the X rays. He testified for claimant that his findings were consistent with a herniated disc, and that the condition could be caused by the type of injury claimant had on April 8, 1981.

On July 13, 1981, a hearing before the arbitrator was conducted. In addition to the evidence discussed above, Dr. Chand testified that the myelogram report was inconsistent with his negative clinical findings. Dr. Charles W. Samet, a radiologist, testified that he had reviewed X rays taken of claimant by Dr. Kaushal and found that the X rays did not show abnormalities. The arbitrator adopted Dr. Kaushal's testimony. He found that claimant's injury arose out of and in the course of her employment, that the herniated disc occurred while she was working, and that she gave prompt notice of the injury. The arbi-

trator awarded compensation for temporary total disability. On February 17, 1983, the Commission affirmed the benefits award and added penalties and attorney fees.

On March 8, 1983, Ford sought *certiorari* in the circuit court. On February 27, 1984, Ford voluntarily paid the temporary disability award, but continued to challenge the penalties awards. On June 1, 1984, the circuit court held that the evidence sufficiently supported the Commission's decision to impose penalties, and confirmed the decision. The court pointed out that Ford had received a diagnosis of incipient herniated disc immediately after the conditional medical leave expired and that the company doctor would not have allowed claimant to return to work if he had seen Dr. de Melo's reports. The court stated that Ford "knew that Petitioner's medical problems commenced the day she reported to the Medical Department and the sequence of events following were indicative that her back injury probably arose out of her employment. Respondent's refusal to pay any benefits to the Petitioner under these circumstances the Commission found was unreasonable."

Ford contends on appeal that the penalties are inappropriate because it relied on expert medical opinions in good faith when it chose to withhold compensation and challenge the causal connection between claimant's herniated disc and the injury at work.

■ The Act provides an income stream to an injured worker, who is typically left without income while he is disabled. (*Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 412 N.E.2d 468.) The penalty sections attempt to prevent bad faith and unreasonable withholding of compensation benefits from employees. (*Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 442 N.E.2d 861.) If an employer acts in reliance upon qualified medical opinion, penalties are not usually imposed. (*O'Neal Brothers Construction Co. v. Industrial Com.* (1982), 93 Ill. 2d 30, 442 N.E.2d 895.) But the employer's withholding of compensation is unreasonable when the evidence that an employer has, or should reasonably have, in its possession discloses the absence of any substantial grounds for challenging liability. (*Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 442 N.E.2d 861.) The test is whether the employer's reliance was objectively reasonable under the circumstances. (*Consolidated Freightways, Inc. v. Industrial Com.* (1985), 136 Ill. App. 3d 630, 483 N.E.2d 652.) This is a question of fact, and a court will not disturb the Commission's determination unless it is contrary to the manifest weight of the evidence. (*Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 442 N.E.2d 861.) The employer bears the burden of justifying the delay in paying the benefits.

*City of Chicago v. Industrial Com.* (1976), 63 Ill. 2d 99, 345 N.E.2d 477.

■■ While Ford admits claimant strained her back at work, it denies any connection between the incident and the herniated disc. Ford contends that its withholding of compensation was in good faith because it relied on medical opinions from Drs. McFarland and Chand and later Dr. Renaud. Ford also argues that Dr. McFarland's failure to see the myelogram report is irrelevant because the same doctors all stated that claimant's accident could not have caused a herniated disc. Ford maintains that it is more likely that the injury occurred seven months earlier when claimant fell down the stairs at home. The test, however, is not whether there is a conflict in the various medical opinions. Instead, the test is whether the employer's conduct in relying on the medical opinion to contest liability was reasonable under all the circumstances presented. (*Continental Distributing Co. v. Industrial Com.* (1983), 98 Ill. 2d 407, 456 N.E.2d 847.) Here, the record shows Ford's reliance on the opinions of Drs. McFarland and Chand was unreasonable, and there was ample evidence to support the Commission's decision to so find.

■■ It was unreasonable for Ford to rely on the brief examinations of Drs. McFarland and Chand when the treating physician had performed extensive tests and had observed claimant in the hospital for two weeks. If an employer could delay payment every time medical opinions differed, the Act's purpose of providing a stream of income to an injured employee would be side-stepped easily and frequently. The differing medical opinions must be weighed carefully, considering such factors as the length and thoroughness of the examination, the extent of observation and testing performed the specialty of the doctor, whether the doctor is the treating physician, and whether the doctor possessed all available information before rendering the opinion. In relying on a qualified medical opinion, it would be unreasonable for an employer to ignore other medical opinions. Ford unreasonably relied on the initial diagnosis of strained back muscles despite strong medical evidence showing that the injury was more serious.

It was also unreasonable for Ford to terminate claimant and deny compensation benefits after she had been absent for almost one month when, during that month, Ford's employees were made aware that claimant was disabled. Claimant informed Hanford that she was in the hospital and needed information about filing a claim. After Ford asked for a letter from her doctor, Dr. de Melo wrote the requested letter dated May 7, stating that claimant was going to be hospitalized and have a myelogram. That letter was sent to Hanford. Dr. de Melo sent

Ford a report dated May 19 which stated that claimant had undergone a myelogram and that the diagnosis was a herniated disc and that she could not return to work. Claimant contacted Ford many times during her disability period. Especially at this initial stage, Ford had no reasonable basis for withholding the compensation benefits. Ford knew that claimant injured her back at work in April, continued to have severe pain in April and May resulting in a medical leave, was under a doctor's care, was hospitalized and underwent a myelogram, resulting in a diagnosis of a herniated disc. Ford unreasonably chose to ignore this strong evidence of a causal connection between the April 1981 injury at work and the diagnosis of a herniated disc the following month.

Further, Dr. McFarland and Ford's personnel administrator testified that the medical reports from Dr. de Melo were misfiled. Dr. McFarland stated that if he had seen the misfiled reports regarding the myelogram he would not have released claimant for work. Ford was unreasonable in relying on Dr. McFarland's judgment in releasing claimant for work when Ford failed to give Dr. McFarland the information it had in its possession which was necessary for the doctor to make that judgment.

Ford relies on *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, 413 N.E.2d 390, and *Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 412 N.E.2d 468, to show that its nearly three-year delay in paying the benefits was in good faith. Those cases, however, did not involve fact situations where the employer had in its own files later and more thorough medical reports which differed sharply from the results of earlier and more cursory examinations. Moreover, *Avon* and *Brinkmann* did not involve situations where the employer knew of a clear sequence of events leading from the work injury to the hospitalization and diagnosis showing that claimant was disabled by the work injury.

We hold that the Commission's imposition of penalties and attorney fees on Ford for unreasonably withholding benefits from claimant was not against the manifest weight of the evidence.

After the foregoing reasons, the judgment of the circuit court of Cook County confirming the Commission's award of penalties and attorney fees to claimant is affirmed.

Judgment affirmed.

WEBBER, P.J., and LINDBERG, BARRY and KASSERMAN, JJ., concur.