CRAIG CHRISTMAN, Petitioner-Appellee, v. THE INDUSTRIAL COM-MISSION *et al.* (Walsh Construction Company, Appellant).

Third District (Industrial Commission Division)   No. 3—88—0120WC

Opinion filed March 10, 1989.

Richard J. Lannon, Jr., of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle, for petitioner.

Mark A. Schindler, of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for respondent.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Craig Christman, filed a claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*), alleging injuries to his knees as a result of a fall which occurred on October 6, 1982, while working for respondent, Walsh Construction Company. The arbitrator awarded petitioner 6⁵/₇ weeks of temporary total disability compensation at $335.84 per week, 70 weeks of permanent partial disability for a 35% loss of use of the right leg at $282.25 per week, and medical benefits. On review, the Industrial Commission (Commission) modified the decision of the arbitrator and awarded petitioner 118⁴/₇ weeks of temporary total disability at $426.44 per week, medical benefits, penalties under sections 19(k) and 19(l) of the Act, and attorney fees. The Commission found that petitioner's condition had not yet reached a state of permanency and remanded the cause to the arbitrator for further proceedings on the issue of permanent disability. The circuit court of La Salle County confirmed the decision of the Commission. On appeal, respondent contends that the awards of temporary total disability and of penalties were improper.

Petitioner testified that on October 6, 1982, he injured both knees when he fell while working for respondent. He noticed that there was a nail sticking out of his right leg, just below the kneecap. He was treated at the nurse's station and then returned to work. After returning to work, his knees became so sore that he left work and went home. Petitioner next reported to work on October 8, 1982. He again went to the nurse's station and was sent to see the company physician, Dr. Bettasso. Dr. Bettasso took X rays and petitioner returned to work.

Petitioner continued working for respondent but began treatment for "crunching" and pain in his knees. Prior to the end of 1982, he was treated for his knee injuries by Dr. Spenader. Dr. Spenader referred petitioner to an orthopedic specialist, Dr. Al-Masri. Dr. Al-

Masri saw petitioner on February 24, 1983, and on March 18, 1983. On each occasion, petitioner complained of pain, swelling, giving out and numbness in both knees. Dr. Al-Masri diagnosed petitioner as having bilateral chondromalacia of the patella. He gave petitioner cortisone injections and prescribed a knee brace for the right knee.

On April 15, 1983, petitioner sustained a back injury while working for respondent. He did not return to work following this injury. While off work, he also received treatment for his knee injuries. In *Christman v. Industrial Comm'n* (1987), 159 Ill. App. 3d 479, 512 N.E.2d 804, this court found that petitioner's back injury arose out of his employment. Respondent subsequently began to pay temporary total disability benefits to petitioner.

On August 22, 1983, respondent's insurance carrier requested that petitioner be examined by Dr. Marquardt. Dr. Marquardt concluded that petitioner was suffering from chondromalacia of the patella and that the injury petitioner sustained may have aggravated this underlying condition. He also stated that it was possible that petitioner's condition was post-traumatic in nature and secondary to his injury.

On January 10, 1984, petitioner again was examined by Dr. Al-Masri. Dr. Al-Masri determined that petitioner required immediate surgery on both knees. On January 20, 1984, Dr. Al-Masri performed arthroscopic surgery on petitioner's left knee. At that time, Dr. Al-Masri contemplated similar treatment for the right knee.

Both before and after the surgery, petitioner requested that respondent's insurance carrier begin payment of temporary total disability and medical benefits. The carrier replied that no action could be taken until it received additional medical records. Petitioner informed the carrier that petitions for sanctions under section 19(k) and 19(l) of the Act would be filed. The carrier was provided with complete medical records but continued to refuse to pay temporary total disability benefits to petitioner.

Petitioner was released from the hospital on January 23, 1984, and continued to be treated by Dr. Al-Masri. Petitioner's condition did not improve. As a result, on August 20, 1984, he had a patellectomy of the left knee and on February 25, 1985, he had a patellectomy of the right knee. Dr. Al-Masri stated that petitioner was suffering from degenerative arthritis of the patellofemoral joint and chondromalacia of the patella of both knees. He also stated that an injury could aggravate a previously silent early degenerative arthritis and that direct injury to the patella could cause chondromalacia of the patella. Dr. Al-Masri concluded that the injury most likely was permanent and would

prevent petitioner from doing heavy labor, standing on his feet for a full day, and climbing and descending stairs.

On July 31, 1984, the arbitrator ruled that petitioner was entitled to temporary total disability benefits of $335.84 per week for a period of 6⅝ weeks and medical benefits. At that time, the arbitrator declined to assess penalties against respondent.

On August 15, 1985, at the request of respondent, petitioner was examined by Dr. Smith. Dr. Smith concluded that the treatment rendered subsequent to the initial month or so following petitioner's accident was not related to the accident. He noted, however, that records relating to petitioner's medical treatment after the date of the injury were not supplied to him and that it would be worthwhile to review those records.

On August 26, 1985, petitioner was examined by Dr. Wilson. Dr. Wilson opined that petitioner had sustained injuries to both knees, which resulted in an exacerbation of a preexisting osteoarthritic condition. He determined that petitioner had not yet fully recovered.

On September 20, 1984, both petitioner and respondent filed petitions for review of the arbitrator's decision. At that time, petitioner additionally filed a petition for penalties under section 19(l) of the Act. The Commission found that prior to the August 15, 1985, examination of petitioner by Dr. Smith, respondent presented no evidence that petitioner was not temporarily totally disabled or that the condition of his knees was not causally related to the accident. The Commission ruled that respondent's failure to pay temporary total disability benefits was unreasonable. Accordingly, the Commission increased petitioner's award to 118⁴⁄₇ weeks of temporary total disability; $25,623.80 for reasonable and necessary medical expenses; $25,281 as penalties under section 19(k) of the Act; $2,500 under section 19(l) of the Act; and $15,169.08 for attorney fees pursuant to section 16 of the Act.

Respondent first contends that the award of temporary total disability benefits was improper. It alleges that petitioner sustained no current wage loss as a result of the knee injury. In support of this allegation, respondent points to the fact that petitioner already was disabled by an intervening back injury at the time of the corrective knee surgery. Respondent further cites to the fact that petitioner continued working after the knee injury until he sustained the back injury. From these facts respondent concludes that petitioner's current wage loss was related to the back injury and not to his knee injury.

■■ Temporary total disability exists within the meaning of the Act from the time injury incapacitates an employee for work until he

is as far recovered or restored as the character of the injury will permit. (*Arbuckle v. Industrial Comm'n* (1965), 32 Ill. 2d 581, 207 N.E.2d 456.) An award for temporary total incapacity is justified even though such incapacity does not immediately follow an accidental injury when it clearly can be shown that the incapacity is directly traceable to and the result of the injury. (*Bettinardi v. State* (1939), 11 Ill. Ct. Cl. 38.) Moreover, an employee should not be denied compensation merely because he attempted to work as long as he could after the date of the injury. *Grey v. Industrial Comm'n* (1966), 35 Ill. 2d 462, 220 N.E.2d 427.

■ In *Furlong Construction Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 464, 376 N.E.2d 1011, the court determined that an intervening nonwork-related disability does not cut off an employee's right to receive temporary total disability benefits for a prior work-related injury. Similarly, we believe that an intervening work-related disability does not cut off an employee's right to receive temporary total disability benefits for the first work-related disability.

A review of the record establishes a well-documented, progressive deterioration of petitioner's knees commencing with the bilateral knee injuries which he sustained on October 6, 1982, and culminating in arthroscopic surgery and the eventual removal of both knee caps. Dr. Al-Masri, Dr. Marquardt and Dr. Wilson all attributed this progression to the knee injury. Only Dr. Smith suggested the disability was not causally connected to the injury. Dr. Smith, however, did not review petitioner's complete medical record and in fact indicated that a review of these documents would be helpful.

Furthermore, the surgery which petitioner eventually had was contemplated from the outset of his treatment, but was to be implemented only if other therapy was not successful. The fact that petitioner suffered an intervening disability before undergoing knee surgery does not alter our holding. We believe that the intervention of the second work-related disability does not alone justify the denial of benefits for the first.

Respondent suggests that the proper focus of this analysis is loss of wages rather than loss of work-related capacity. Respondent concludes that there is no loss of wages directly related to the knee injury because petitioner continued working after the knee injury, ceasing employment only after the back injury. Thus, respondent argues that petitioner's wage loss is not due to the knee injury and, therefore, that he is not entitled to temporary total disability benefits for that injury.

■ The purpose of the Workers' Compensation Act is to provide

compensation for injuries suffered by employees in the course of their employment. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) Generally, an employee's wage is the standard used to determine the compensation due him. Nonetheless, the compensation is directed at the actual loss occasioned by the injury, not at the loss of wages. Lost wages merely are an objective method of compensating the employee during his period of incapacity. In fact, the temporary total disability section of the Act specifically states that the compensation is meant to address "incapacity." (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(b).) That the incapacity occurs at a time when the employee, for some other reason, is not receiving wages is not relevant provided the current incapacity can be traced to the work-related injury. See, *e.g., Zenith Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 278, 437 N.E.2d 628.

■ Here, the Commission reasonably concluded that petitioner's initial disability was causally connected to a work-related injury. The Commission was entitled to rely on the conclusions of petitioner's treating physician and to accord less weight to any contrary conclusions of respondent's examining physician. Moreover, in our judgment, the Commission's finding that petitioner was entitled to temporary total disability benefits for the disability resulting from his knee injury was proper. An intervening disability will not cut off an employee's right to total temporary disability benefits for a continuing work-related disability.

Respondent next contends that the imposition of penalties under Sections 19(k) and 19(l) of the Act (Ill. Rev. Stat. 1981, ch. 48, pars. 138.19(k), (l)) and the award of attorney fees under section 16 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.16) were improper.

■ Initially we note that the Commission's imposition of penalties under section 19(k) and its award of attorney fees under section 16 were unwarranted because petitioner never properly presented these issues to the Commission. The Commission may consider, and oral arguments will be limited to, only those issues raised in *both* the review proceedings stipulation form or its equivalent, *and* in the party's statement of exceptions and supporting briefs. (50 Ill. Adm. Code 7040.70(d) (1985) (as amended at 9 Ill. Reg. 16249 (1985), and corrected at 9 Ill. Reg. 17459 (1985).) Here, the review proceedings stipulation form did not raise the issue of penalties nor did it raise the issue of attorney fees. Petitioner did, however, file a written petition for penalties under section 19(l) of the Act on the same date that he filed his review proceedings stipulation. Moreover, his brief before the Commission discussed penalties under section 19(l) as did his state-

ment of exceptions. (Section 19(l) penalties are limited to a maximum of $2,500.) Petitioner's brief and statement of exceptions additionally discussed attorney fees under section 16. There was, however, no mention of penalties under section 19(k).

■ We believe petitioner's failure to raise the issue of penalties under section 19(l) in the review proceedings stipulation form was cured by his filing of a written petition seeking 19(l) penalties on the same date that he filed the review proceedings stipulation form. However, petitioner's failure to raise the section 19(k) penalties issue and the section 16 attorney fees issue both in the review proceeding stipulation form *and* in the petition for penalties precluded the Commission from properly considering those issues. Accordingly, it was error for the Commission to have imposed penalties under section 19(k) and to have awarded attorney fees under section 16.

■ Moreover, if we were to find that petitioner adequately raised the issue of attorney fees by including section 16 in his statement of exceptions and supporting brief, we still would find that the Commission erred in ordering respondent to pay petitioner's attorney fees under section 16. Section 16 provides, in relevant part, that attorney fees may be awarded if the employer "has been guilty of unreasonable or vexatious delay, intentional underpayment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy, *within the purview of the provisions of paragraph (k) of Section 19 of this Act.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 48, par. 138.16.) There is no parallel provision in section 16 for an award of attorney fees based upon the conduct delineated in section 19(l). Thus, attorney fees under section 16 may not be awarded when penalties are imposed pursuant to section 19(l). See *Boker v. Industrial Comm'n* (1986), 141 Ill. App. 3d 51, 489 N.E.2d 913.

Accordingly, we set aside the decision of the Commission insofar as it imposes penalties under section 16 and 19(k) and need only review the propriety of the penalties imposed under section 19(l).

■ ■ Penalties properly may be imposed under section 19(l) when it is determined that the employer, or his insurance carrier, has unreasonably delayed the payment of benefits due an employee during the period of temporary total disability. (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(l).) The question to be resolved is whether the employer's conduct is reasonable. (*Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 20, 442 N.E.2d 883.) The employer bears the burden of justifying any delay in payment of benefits under section 19(l). (*Ford Motor Co. v. Industrial Comm'n* (1986), 140 Ill. App. 3d 401, 488 N.E.2d 1296.) Penalties will not be imposed when the employer's

reliance upon qualified medical opinion was objectively reasonable under the circumstances. (*Ford Motor Co. v. Industrial Comm'n* (1986), 140 Ill. App. 3d 401, 488 N.E.2d 1296.) The question of whether there has been an unreasonable delay in payment of benefits is one of fact and, as with other questions of fact, findings of the Commission will not be disturbed unless they are against the manifest weight of the evidence. *Board of Education v. Industrial Comm'n* (1968), 39 Ill. 2d 167, 233 N.E.2d 362.

In our view, the Commission's finding that respondent unreasonably delayed payment of petitioner's benefits was not against the manifest weight of the evidence. Neither respondent's continued refusal to pay temporary total disability benefits to petitioner nor its reliance on the opinion of Dr. Smith were objectively reasonable. Petitioner immediately reported and documented his accident with respondent. Moreover, respondent was in possession of petitioner's medical records, letters from Dr. Al-Masri, and the evaluation of Dr. Marquardt, respondent's first evaluating physician, all of which reflected a disability causally connected to the work-related injury. The only contrary medical opinion which respondent had was that of its second evaluating physician, Dr. Smith, who admitted he had not reviewed petitioner's complete medical records. We believe that respondent's reliance on the opinion of Dr. Smith was unreasonable and that its refusal to comply with the decisions of the arbitrator and the Commission directing it to compensate petitioner for the incapacity resulting from the knee injury was unjustifiable. Accordingly, we find the Commission's imposition of penalties under section 19(l) was not against the manifest weight of the evidence.

For the foregoing reasons the judgment of the circuit court of La Salle County is affirmed as to the award of temporary total disability benefits and as to the imposition of penalties in the amount of $2,500 under section 19(l), and is reversed as to the imposition of penalties under section 19(k) and as to the award of attorney fees under section 16.

Judgment affirmed in part, and reversed in part.

BARRY, P.J., and WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.