THOMAS HURT, Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Borden Chemical Company, Appellee and Cross-Appellant).

Fourth District (Industrial Commission Division)   No. 4—89—0106WC

Opinion filed December 14, 1989.

Roger Edward Ryan, of Springfield, for appellant.

Stevenson, Rusin & Friedman, Ltd., of Chicago (Douglas F. Stevenson and Gregory G. Vacala, of counsel), for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The claimant, Thomas Hurt, seeks reversal in part of an order of the circuit court confirming the decision of the Illinois Industrial Commission (hereafter referred to as the Commission), which, in turn, affirmed the decision of the arbitrator. Claimant raises a single issue for our review: whether the Commission erred in failing to award him penalties, pursuant to sections 19(k) and (l) of the Workers' Compensation Act (hereafter referred to as the Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 138.19(k), 138.19(l)), and attorney fees, pursuant to section 16 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.16). Claimant describes the judgment of the circuit court and the decision of the Commission as "entirely favorable" to him in all other respects. Claimant suffered a broken nose on February 7, 1985, when struck by a fellow employee in the employer's parking lot. The employer, Borden Chemical Company, has cross-appealed the judgment of the circuit court, questioning, *inter alia*, whether the claimant's accident arose out of

and in the course of his employment.

Upon entry of the arbitrator's decision the employer sought review by the Commission. Following submission of the employer's statement of exceptions and supporting brief the claimant submitted his response. In "Count I" of his response claimant sought against the employer penalties under sections 19(k) and (l) and attorney fees under section 16; in "Count II" of his response he sought against both the employer and its attorney penalties and attorney fees under those same sections. Claimant contended that the statement of exceptions and supporting brief submitted by the employer was "a complete fabrication offered in bad faith." In response to the Commission's notice of predecision memorandum on review, the claimant requested a written decision on review setting forth the reasons for the decision concerning the issues, among others, the failure to assess penalties and attorney fees. The written decision of the Commission, dated March 7, 1988, made no reference to penalties or attorney fees. The claimant thereupon sought review in April of 1988 in the circuit court, which, likewise, in its judgment, entered in January of 1989, did not refer to penalties or attorney fees.

In its brief to this court the employer argues, as it did in the circuit court, that the claimant's demand for penalties was not properly presented to the Commission. On the review proceedings stipulation form submitted to the Commission, signed by counsel for both parties, claimant did not indicate that penalties or attorney fees were in issue. That form states with regard to "Penalties" that a written petition must be on file. In his brief claimant asserts that "[t]he controversy giving rise to this appeal began with a brief filed by [counsel for the employer] entitled 'RESPONDENT'S STATEMENT OF EXCEPTIONS AND SUPPORTING BRIEF.'" Claimant argues that he raised the issue and asked for penalties and attorney fees "at his first opportunity, in his responding brief." At no time did claimant file a petition for penalties.

■ Our supreme court has stated that a petition requesting additional compensation because of delay under section 19(k) must be directed to the Commission so that it may determine as a question of fact whether such delay exists (*Garrison v. Industrial Comm'n* (1980), 83 Ill. 2d 375, 415 N.E.2d 352). The employer relies upon *Christman v. Industrial Comm'n* (1989), 180 Ill. App. 3d 876, 536 N.E.2d 773, in which we noted that the Commission's award of penalties under section 19(k) and attorney fees under section 16 were unwarranted because the claimant had never presented those issues properly to the Commission. In *Christman* the review proceedings

stipulation form did not raise the issue either of penalties or of attorney fees. However, on the same date that the claimant filed his review proceedings stipulation, he filed a written petition for penalties under section 19(l). His brief discussed penalties under section 19(l) and attorney fees under section 16, as did his statement of exceptions. He did not mention penalties under section 19(k). We said in *Christman* that "[t]he Commission may consider, and oral arguments will be limited to, only those issues raised in *both* the review proceedings stipulation form or its equivalent, *and* in the party's statement of exceptions and supporting briefs" (emphasis in original) (180 Ill. App. 3d at 882, 536 N.E.2d at 777). We concluded that the claimant's failure to raise the issue of penalties under section 19(l) in the review proceedings stipulation form was cured by his filing of a written petition seeking 19(l) penalties on the same date that he filed the review proceedings stipulation form but that his failure to raise the issues of penalties under section 19(k) and attorney fees in either the review proceedings stipulation form or in the petition for penalties precluded the Commission from properly considering those issues. Thus, we determined that it was error for the Commission to have imposed penalties under section 19(k) and to have awarded attorney fees under section 16.

■■ In the instant case the issues of penalties and attorney fees were raised neither in the review proceedings stipulation form nor in a petition. The claimant did not, for example, file such a petition when he filed his response to the employer's statement of exceptions and supporting brief. This failure precluded the Commission from considering these issues. Hence, the Commission did not err in failing to award claimant penalties and attorney fees.

In its cross-appeal the employer raises two other issues for review: (1) "[w]hether, when there is no evidence indicating it is work-related, an otherwise 'unexplained assault' constitutes an accident arising out of and in the course of employment" and (2) "[w]hether an award of '15 week [*sic*] *** for a nasal bone fracture' is authorized by Section 8(d)(2) when there is no finding the injury is 'serious and permanent' or results in a 'permanent partial disability' as required by the statute and judicial decision construing it."

Initially, we address the claimant's contention that the employer may not raise issues not presented by the claimant to the circuit court because the employer did not seek judicial review there. Section 19(f)(1) (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(f)(1)) begins as follows:

> "Except in cases of claims against the State of Illinois, in which case the decision of the Commission shall not be subject

to judicial review, the Circuit Court of the county where any of the parties defendant may be found, or if none of the parties defendant can be found in this State then the Circuit Court of the county where the accident occurred, shall by summons to the Commission have power to review all questions of law and fact presented by such record.

A proceeding for review shall be commenced within 20 days of the receipt of notice of the decision of the Commission. The summons shall be issued by the clerk of such court upon written request returnable on a designated return day, not less than 10 or more than 60 days from the date of issuance thereof, and the written request shall contain the last known address of other parties in interest and their attorneys of record who are to be served by summons."

In subparagraph (f)(1), Public Act 83—360, which became effective September 14, 1983, deleted references to writs of *certiorari* and writs of *scire facias* by substituting therefor "summons" wherever it appears in subparagraph (f)(1) and, at the beginning of the second paragraph of subparagraph (f)(1), by substituting "A proceeding for review" for "Such suit by writ of certiorari." (Ill. Ann. Stat., ch. 48, par. 138.19, Historical Note, at 58 (Smith-Hurd 1986).) Public Act 83—360 twice substituted "written request" for "praecipe" in the second paragraph of subparagraph (f)(1). (Ill. Ann. Stat., ch. 48, par. 138.19, Historical Note, at 58 (Smith-Hurd 1986).) Prior to these revisions subparagraph (f)(1) began as follows:

"Except in cases of claims against the State of Illinois, in which case the decision of the Commission shall not be subject to judicial review, the Circuit Court of the county where any of the parties defendant may be found, or if none of the parties defendant can be found in this State then the Circuit Court of the county where the accident occurred, shall by writ of certiorari to the Commission have power to review all questions of law and fact presented by such record.

Such suit by writ of certiorari shall be commenced within 20 days of the receipt of notice of the decision of the Commission. Such writ of certiorari and the writ of scire facias shall be issued by the clerk of such court upon praecipe returnable on a designated return day, not less than 10 or more than 60 days from the date of issuance thereof, and the praecipe shall contain the last known address of other parties in interest and their attorneys of record who are to be served by scire facias."

Ill. Rev. Stat. 1981, ch. 48, par. 138.19(f)(1).

■ Prior to these changes the rule was well established that a writ of *certiorari* brought the entire record of the Commission before the court and that an adverse party did not need to obtain a separate writ of *certiorari* in order to challenge elements of the Commission's decision (*Hascek v. Industrial Comm'n* (1979), 77 Ill. 2d 466, 397 N.E.2d 808). It was never intended that a "cross writ of *certiorari*" should be necessary in order for the opposing party to preserve his right to object to any question arising on the record or involved in the decision reviewed. (*Harrawood v. Industrial Comm'n* (1977), 66 Ill. 2d 230, 362 N.E.2d 350; *Murrelle v. Industrial Comm'n* (1943), 382 Ill. 128, 46 N.E.2d 1007.) The changes effected by Public Act 83—360 are plainly minor procedural ones. They do not indicate an intent on the part of the legislature to alter the law concerning the preservation of an adverse party's right to object to questions arising on the record or questions involved in the decision reviewed. They do not suggest that the opposing party must also file a summons in order to preserve that right. The summons issued to the Commission upon the written request of the instant claimant brought before the circuit court the employer's objections to the Commission's award. Thus, the claimant's contentions to the contrary are without merit.

We turn now to the issue the employer raises whether the claimant's accident arose out of and in the course of his employment. Following a hearing conducted on September 16, 1985, the arbitrator found with regard to this issue as follows:

> "[Claimant] testified that on the morning of the occurrence upon arriving at work, he parked his vehicle in the company lot. He climbed out of said vehicle, but still had the driver's door open and was reaching inside the vehicle to remove his lunch bucket when he was approached by a co-employee, Dave Turner. Without provocation or warning and without saying anything, Turner smashed his fist or another blunt object into [claimant's] face. Then he said something that sounded like 'bear claw,' pointed to the plant, and walked away. *** [Claimant] further testified that he had worked with Turner for some-time [*sic*] and that he had no prior arguments, animosity or disagreements with his assailant. [Claimant] is a considerably larger man than his assailant.
>
> Co-employee, William L. Johnson, testified that on December 17, 1984[,] after he pulled into the company parking lot and got out of his vehicle, Dave Turner approached him and without provocation or warning, punched him in the mouth stating[,] 'I am no queer.' Although Johnson, like Petitioner, is a considera-

bly larger man than his assailant, he testified that he did not fight back because Supervisor Charles Karrick was approaching them and Johnson did not want to get fired. Mr. Johnson did not report the incident but later testimony established that [the employer] later did conduct an investigation to determine [copy indistinguishable] Turner was involved.

Co-employee Eric L. Mendenhall testified that he knew and had worked with Dave Turner and never had a problem with him. He liked the guy. In September or October, 1984, Mendenhall and some other co-employees had been talking about a movie by rock star Prince and in the discussion one of the men stated in his opinion that Prince was a 'queer.' After work, Mendenhall was walking toward his vehicle in the company parking lot and slowed down to allow Turner to catch up to him and asked Turner what he was going to do that night. Turner replied, 'Take care of business.' Then, Turner said, 'You may kick my ass for this, but...' and took a swing at Mendenhall. The blow missed Mendenhall. He explained to Turner the nature of the conversation at break and that they were not referring to Turner as a 'queer.' A couple of days later, Mendenhall reported the incident to Robert Timmons, Supervisor of the Paste Department.

Group leader, David Lehman, testified that he knew Turner and had worked with him in the past and had a good relationship with him. Two days prior to the attack on [claimant], Turner worked with Lehman for about four hours. Lehman noticed Turner was behaving quite differently than when they had worked together previously. Turner was highly agitated and cursing for no apparent reason. Lehman asked if there was anything he could do to help out. Turner replied, 'I got a problem, but I'll handle it.' Later on the same day, Lehman went to Supervisor Dave Moffitt and informed him that something was bothering Turner and offered to take Turner on his crew to work with him or help Turner if he could.

Personnel Director, Essex Mitchell[,] testified from his own personal knowledge and from reviewing the personnel records of David Turner that no action had been taken by the company concerning the matter. Charles Karrick did indeed witness the attack on William Johnson. Eric Mendenhall had reported Turner's attack on him to supervisory employee, Robert Timmons. Group leader, David Lehman, had reported to supervisory employee, David Moffitt, that something was bothering Turner.

The Arbitrator concludes that agents for [the employer] were aware of David Turner's bizarre behavior and his possible violence but failed to act to protect other employees; therefore, [claimant's] accidental injuries did arise from and in the course of his employment by [the employer]."

Upon review before the Commission no additional evidence was presented. The Commission found that an individual had approached the claimant and "struck him in the nose for some unexplained and unprovoked reason." The Commission found further that the findings of the arbitrator were supported by the evidence in the record and expressly adopted them.

The employer maintains that there is no evidence here that the assault was work related and that "[a]t best, the evidence shows an unexplained assault," which, as such, was a risk incidental to the general public and was not an accident arising out of and in the course of the claimant's employment. The claimant argues that he sustained injury as the result of an unprovoked attack by an irrational coemployee and that the injury is compensable pursuant to the authority of *Rodriguez v. Industrial Comm'n* (1982), 95 Ill. 2d 166, 447 N.E.2d 186.

■■ ■ The purpose of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) is to protect employees against risks and hazards peculiar to the nature of the work they are employed to do. (*Illinois Bell Telephone Co. v. Industrial Comm'n* (1989), 131 Ill. 2d 478.) An injury is compensable under the Act only if it "aris[es] out of" and "in the course of" the employment. (Ill. Rev. Stat. 1985, ch. 48, par. 138.2; *Illinois Bell*, (1989), 131 Ill. 2d 478.) While the phrase "in the course of employment" relates to the time, place and circumstances of the injury, the phrase "arising out of the employment" refers to the requisite causal connection between the injury and the employment. (*Associated Vendors, Inc. v. Industrial Comm'n* (1970), 45 Ill. 2d 203, 258 N.E.2d 354.) In the instant case the employer makes no specific or serious contention that the injury did not occur in the course of the claimant's employment, and we do not consider that assertion further. An injury may be said to arise out of the employment when, upon consideration of all of the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is to be performed and the resulting injury. (*Pazara v. Industrial Comm'n* (1980), 81 Ill. 2d 76, 405 N.E.2d 767.) While it is not necessary that the injury be one which ought to have been foreseen or expected, it must be one which after the event may be seen to have had its origin in the nature of the employment. *Taylor Coal Co. v. Industrial Comm'n* (1922), 301 Ill. 548, 134 N.E. 172.

■ Concerning the issue of compensability for injuries resulting from assaults, the supreme court stated in *Schultheis v. Industrial Comm'n* (1983), 96 Ill. 2d 340, 449 N.E.2d 1341, that it has consistently held that injuries suffered by employees as a consequence of assaults were not compensable if there was evidence to sustain a finding by the Commission that the motive was personal to the victim rather than work related or if the claimant could not demonstrate a reason for the assault. An injury caused by the attack of one employee upon another does not arise out of the employment when no reason for the attack is shown. *American Brake Shoe Co. v. Industrial Comm'n* (1960), 20 Ill. 2d 132, 169 N.E.2d 256.

In *Rodriguez* (95 Ill. 2d 166, 447 N.E.2d 186), decided shortly before *Schultheis* was, the supreme court treated an assault in the workplace motivated by a general racial or ethnic prejudice as a compensable "neutral" risk arising out of the employment. Of so-called "neutral" assaults the court observed:

"Professor Larson describes a category of 'neutral assaults' to account for those assaults which are neither personal nor clearly occupational in origin. This category includes 'those assaults which are in essence equivalent to blind or irrational forces' (1 A. Larson, Workmen's Compensation sec. 11.31, at 3–224 (1978)), and comprises but is not limited to assaults by insane or drunken co-employees and assaults the motive for which is unexplained although the identity of the assailant is known. (1 A. Larson, Workmen's Compensation secs. 11.32–11.34 (1978).) We believe that racial or ethnic prejudice directed by an employee against his co-employee belongs in this category inasmuch as it is an unreasoning emotion ***.

In discussing assaults on claimants by insane, drunken or irresponsible co-employees and unexplained assaults by identifiable co-employees, Professor Larson concludes with approval that a 'demonstrably larger body' to a 'great majority' of decisions from the various States hold the injuries thus suffered to be compensable (1 A. Larson, Workmen's Compensation secs. 11.32(a), 11.33 (1978); see *Health & Hospitals Governing Com. v. Industrial Com.* (1975), 62 Ill. 2d 28, 33). The theory behind the decisions in the irrational co-employee cases is that when a co-employee suffers from a delusion or some similar condition which causes him to erupt into violence, his presence in the workplace in his state is a condition under which his victim is employed and must perform his work, just as a defective machine or ceiling in the workplace would be, and in that sense is

a risk peculiar to the employment and not shared by the world at large. (*Anderson v. Security Building Co.* (1924), 100 Conn. 373, 377, 123 A. 843, 844-45; 40 A.L.R. 1119, 1121 (1926); see also, *e.g.*, *Cedar Rapids Community School v. Cady* (Iowa 1979), 278 N.W.2d 298 (insane delusion); *Pacific Employers Insurance Co. v. Industrial Accident Com.* (1956), 139 Cal. App. 2d 260, 293 P.2d 502 (same); *Crotty v. Driver-Harris Co.* (1957), 45 N.J. Super. 75, 131 A.2d 578 (robbery motivated assault); *Wakefield v. World-Telegram* (1937), 249 App. Div. 884, 292 N.Y.S. 588, aff'd mem. (1937), 274 N.Y. 517, 10 N.E.2d 527 (intoxication); *Perez v. Fred Harvey, Inc.* (1950), 54 N.M. 339, 224 P.2d 524 (same); *Cleland Simpson Co. v. Workmen's Compensation Appeal Board* (1975), 16 Pa. Commw. 566, 332 A.2d 862 (insane delusion that claimant had broken several dates with assailant).) We have found no Illinois decisions holding squarely to the contrary." *Rodriguez*, 95 Ill. 2d at 172-74, 447 N.E.2d at 189-90.

■ In the instant case the claimant demonstrated a reason for the assault, namely, the combativeness and apparent emotional instability of his assailant and coemployee, David Turner. The employer urges that, although claimant "presented several fellow employees to testify they heard or observed prior problems with David Turner, only one prior incident of his actually hitting another employee was mentioned, and this incident was never reported to management." We think that the employer's prior knowledge is not determinative. The claimant showed at the hearing that his assailant had exhibited a propensity toward the kind of assaultive conduct that occurred here. Turner's condition, whether known to the employer or not, was not unlike a defect, known or unknown, in a machine in the employee's work environment. Turner's presence in a combative, apparently emotionally unstable state was a condition in which the claimant was required to work. Thus, the risk of assault was one peculiar to his employment and not one shared by the world at large. Therefore, we hold that the accident arose out of claimant's employment.

■ With respect to the other issue the employer raises, pertaining to the award of 15 weeks made by the arbitrator pursuant to section 8(d)(2) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(d)(2)), the employer argues that before an award can be made under that section there must be a finding of "serious and permanent" injury and a "disability." The employer relies upon *Archer Daniels Midland Co. v. Industrial Comm'n* (1983), 99 Ill. 2d 275, 458 N.E.2d 494, in which the supreme court stated that, in order for a claimant to be eligible for

benefits under section 8(d)(2), the injuries must be "serious and permanent" and result in permanent partial disability or impairment. The employer contends that the instant award of 15 weeks must be reversed.

In the instant case the arbitrator found as follows concerning the nature and extent of claimant's injury, and the Commission adopted these findings:

> "[Claimant] testified that when he was punched in the nose by a fist or other blunt instrument, he experienced immediate severe pain and bleeding from his nose. After the plant nurse provided him first aid, he went directly to Decatur Memorial Hospital, where he was examined by W.J. Pettit, M.D. [Claimant's] Group Exhibit #1, Decatur Memorial Hospital Records, reflects a diagnosis of acute comminuted fracture of [claimant's] nasal bones. On February 11, 1985, [claimant] saw Dr. Pettit for a diagnostic visit. [Claimant's] Group Exhibit #2 indicates he noted [claimant] to have a marked deviation of the dorsum and septum of the nose to the right. On February 12, 1985, he admitted [claimant] to St. Mary's Hospital where he performed a closed reduction under general anesthesia. When Dr. Pettit saw [claimant] on March 18, 1985, he still had some congestion, and when he saw him again on June 3, 1985, [claimant] continued to have inflammation.
>
> [Claimant] is no longer under treatment. He testified that cool air causes a burning sensation of his nasal passages. At night his nasal passages fill up when he lies down. He now snores and wakes up with a dry throat. Whenever he bends over to pick up something, such as bags of soda ash at work, he feels pressure around his eyes; his eyes water; and he experiences a headache for about one-half hour. His nasal passages itch in hot dry air such as that found at work and he sneezes frequently. He further testified he did not experience any of these symptoms or conditions prior to the occurrence."

The arbitrator found further, as did the Commission in adopting the finding, that the claimant was entitled to receive from the employer "the sum of $224.16 per week for a further period of 15 weeks, as provided in §8(d)(2) of the Act as amended, because the injuries sustained caused a nasal bone fracture." The employer argues that a fractured nose can be compensated under the concept of a "man as a whole" where there is "serious and permanent" injury resulting in a "physical impairment" but that the arbitrator made no such findings in the instant case. However, the express findings of the arbitrator

make clear that the award was for the full injury suffered by claimant, namely, a broken nose and the attendant problems he continued to experience thereafter. Thus, we consider this contention of the employer to be without merit.

Affirmed.

BARRY, P.J., and McNAMARA, WOODWARD, and McCULLOUGH, JJ., concur.