(No. 55439.—

TRINIDAD RODRIGUEZ, Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.* (Wikstrom-Higner Company, Appellant).

*Opinion filed January 24, 1983.—Rehearing
denied April 8, 1983.*

Kane, Doy & Harrington, Ltd., of Chicago (Samuel J. Doy, of counsel), for appellant.

Joseph P. Storto, P.C., of Bensenville (Joseph P. Storto, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

Petitioner, Trinidad Rodriguez, seeks compensation under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) for injuries sustained

while at work when a co-worker struck him over the head with a two-by-four. The co-worker, Roger Knoll, had no provocation for the assault; his only apparent motive was prejudice against petitioner because he was Mexican.

The arbitrator found that petitioner's injuries did not arise out of and in the course of the employment and denied compensation. He did not make any specific finding, however, as to what triggered the assault. The Industrial Commission adopted the findings of the arbitrator without hearing additional evidence and without making additional findings of fact. The circuit court of Cook County reversed and remanded the cause to the Industrial Commission for determination of the nature and extent of the injury and computation of an award. On the remand, the Industrial Commission awarded petitioner $24,882.54, an amount covering medical expenses, none of which had been paid by the employer, and compensation based on 20 weeks' temporary total incapacity and 60 weeks' permanent partial incapacity due to skull fracture. The award was confirmed by the circuit court. This is an appeal by the employer, Wikstrom-Higner Company, from that circuit court order.

The employer, a builder of homes, employed petitioner as a carpenter. His job was to construct frames for various portions of houses, a job which was being performed on the site. He had been an employee of Wikstrom-Higner for only three months at the time of the assault. On the day of the incident petitioner was working on the deck of a house separated by one other structure from the house on which Roger Knoll was working. The relative location of the houses was such that petitioner had to pass the place where Knoll was working on his way to his own work site from the lunch area and the parking lot. This had been the arrangement for three days prior to the incident, but petitioner and Knoll had

not known each other and apparently had no conversation until the day of the assault.

Sometime during the morning, petitioner was passing Knoll's workplace when Knoll greeted him with an ethnic slur. Petitioner ignored the slur and went back to the structure to which he was assigned. On his way back from lunch he passed Knoll again, whereupon Knoll made another ethnic slur and petitioner asked him why he talked to him like that. According to petitioner's testimony before the arbitrator, Knoll replied, "Because I don't like Mexicans. And I [*sic*] gonna kill you," to which petitioner said, "You crazy [*sic*]," and started to walk away. Knoll then hit petitioner in the leg with a two-by-four. Petitioner threw it back in Knoll's direction and returned to his station. While petitioner was attempting to resume his work Knoll sneaked up behind him and hit him over the head with another two-by-four, knocking him unconscious and fracturing his skull.

Petitioner's explanation for the incident was that Knoll's daughter had been married to and divorced from a man of Mexican descent and was currently dating other Mexican-Americans, and that Knoll harbored a dislike for Mexicans and people of Mexican descent which erupted into violence on this one particular occasion. The only witness other than the petitioner to testify, an accident investigator called in by the employer, indicated in direct testimony and again on cross-examination that the malfunctioning of a generator which Knoll was using at work that day could have precipitated the assault. This was based on a statement which the investigator had elicited from another employee who had been on the scene at the time that Knoll had been trying without success to start the generator when petitioner came by and Knoll, according to the other employee, exclaimed in petitioner's direction, "This stupid thing must have been made in Mexico, too."

Both sides recognize that there is a factual dispute as to whether the assault was spontaneous or was triggered by the failure of a generator to function properly. The employer argues before this court that the arbitrator and the Industrial Commission found that it was spontaneous and grounded only in Knoll's dislike of Mexicans and asserts that this finding is supported by the evidence. Although petitioner contends that the assault was Knoll's reaction to the difficulty he was having with the generator, he also maintains, and we agree, that the injury is compensable even if the assault was spontaneous and motivated solely by Knoll's dislike of Mexicans.

Injuries occasioned by an assault by a co-employee in the workplace during work hours are compensable in Illinois if the assault arose in the course of a dispute involving the conduct of the work, provided that the claimant is not the aggressor. (*Ford Motor Co. v. Industrial Com.* (1980), 78 Ill. 2d 260 (dispute involved the quality of claimant's work); *Franklin Coal & Coke Co. v. Industrial Com.* (1926), 322 Ill. 23 (dispute involved the division of labor between aggressor and claimant); *Pekin Cooperage Co. v. Industrial Com.* (1918), 285 Ill. 31 (dispute concerned aggressor's taking of barrel staves needed by claimant to do his job).) Such injuries are not compensable as to either the aggressor or the victim where the dispute was purely personal between the two employees. (*Interstate United Corp. v. Industrial Com.* (1976), 65 Ill. 2d 434 (dispute concerned the alleged breaking of aggressor's car antenna by victim); *Malco, Inc. v. Industrial Com.* (1976), 65 Ill. 2d 426 (dispute concerned a betting pool within the workplace which did not further the work and which was not supervised in any way by the employer); *Huddleston v. Industrial Com.* (1963), 27 Ill. 2d 446 (dispute concerned a parking space and was two months old when the assault occurred); *City of Chicago v. Industrial Com.* (1920), 292

Ill. 406 (dispute arose when claimant refused aggressor permission to drink from his drinking can).) In addition, this court has held that injuries suffered in assaults the motives for which are unexplained are not compensable if there is evidence to sustain a finding by the Industrial Commission that the motive was personal to the victim rather than work related or if claimant cannot demonstrate a reason for the assault. (*Greene v. Industrial Com.* (1981), 87 Ill. 2d 1 (identity of aggressor unknown; permissible inference as to motive drawn in employer's favor); *Laboy v. Industrial Com.* (1978), 74 Ill. 2d 18 (identity of aggressor known, but same result); *Thurber v. Industrial Com.* (1971), 49 Ill. 2d 561 (insufficient evidence as to motive); *American Brake Shoe Co. v. Industrial Com.* (1960), 20 Ill. 2d 132 (same); *Math Igler's Casino, Inc. v. Industrial Com.* (1946), 394 Ill. 330 (aggressor was a friend of claimant and no explanation could be given for the attack); *Chicago Hardware Foundry Co. v. Industrial Com.* (1946), 393 Ill. 294 (identity of aggressor, and hence his motive, unknown).) The latter four cases were eroded by *Health & Hospitals Governing Com. v. Industrial Com.* (1975), 62 Ill. 2d 28, in which this court decided that where the assailant's identity was known and there was no evidence of personal motive, an award was proper despite the claimant's inability to give a reason for the assault.

Neither the cases relating to injuries resulting from personal antagonisms nor those relating to unexplained assaults are relevant to this appeal. The facts in this case show that the encounter did not result from a personal quarrel. Knoll and the claimant had no previous contact; they had never spoken to each other prior to the day of the assault, and the claimant did nothing to antagonize or arouse Knoll. The motive for the assault is not unexplained; the evidence demonstrated that the incident occurred because of Knoll's general hostility to-

ward Mexicans.

We find unpersuasive the employer's argument that the ethnic motive for the attack must be characterized as "personal" notwithstanding the absence of any dispute between the attacker and his victim: the cases relied on by the employer (*Pazara v. Industrial Com.* (1980), 81 Ill. 2d 76; *Interstate United Corp. v. Industrial Com.* (1976), 65 Ill. 2d 434; *Huddleston v. Industrial Com.* (1963), 27 Ill. 2d 446) and their predecessors all involved either a dispute of at least some duration or with a cooling-off period, or an assault to which no motive could be ascribed. Prior to the day of the assault against the petitioner, there was no connection whatever between his private life and his assailant. We believe that a claimant must bring *something* from his private life to the scene of an assault by a co-employee for the assault to be considered personally motivated. Here, the most petitioner could be said to have brought to the workplace was his ethnic heritage, over which he of course had no control.

Professor Larson describes a category of "neutral assaults" to account for those assaults which are neither personal nor clearly occupational in origin. This category includes "those assaults which are in essence equivalent to blind or irrational forces" (1 A. Larson, Workmen's Compensation sec. 11.31, at 3—224 (1978)), and comprises but is not limited to assaults by insane or drunken co-employees and assaults the motive for which is unexplained although the identity of the assailant is known. (1 A. Larson, Workmen's Compensation secs. 11.32-11.34 (1978).) We believe that racial or ethnic prejudice directed by an employee against his co-employee belongs in this category inasmuch as it is an unreasoning emotion, although the Larson treatise cites no cases in which the assault was motivated solely by such prejudice and there have been no such cases in Illinois.

In discussing assaults on claimants by insane,

drunken or irresponsible co-employees and unexplained assaults by identifiable co-employees, Professor Larson concludes with approval that a "demonstrably larger body" to a "great majority" of decisions from the various States hold the injuries thus suffered to be compensable (1 A. Larson, Workmen's Compensation secs. 11.32(a), 11.33 (1978); see *Health & Hospitals Governing Com. v. Industrial Com.* (1975), 62 Ill. 2d 28, 33). The theory behind the decisions in the irrational co-employee cases is that when a co-employee suffers from a delusion or some similar condition which causes him to erupt into violence, his presence in the workplace in his state is a condition under which his victim is employed and must perform his work, just as a defective machine or ceiling in the workplace would be, and in that sense is a risk peculiar to the employment and not shared by the world at large. (*Anderson v. Security Building Co.* (1924), 100 Conn. 373, 377, 123 A. 843, 844-45; 40 A.L.R. 1119, 1121 (1926); see also, *e.g., Cedar Rapids Community School v. Cady* (Iowa 1979), 278 N.W.2d 298 (insane delusion); *Pacific Employers Insurance Co. v. Industrial Accident Com.* (1956), 139 Cal. App. 2d 260, 293 P.2d 502 (same); *Crotty v. Driver-Harris Co.* (1957), 45 N.J. Super. 75, 131 A.2d 578 (robbery motivated assault); *Wakefield v. World-Telegram* (1937), 249 App. Div. 884, 292 N.Y.S. 588, *aff'd mem.* (1937), 274 N.Y. 517, 10 N.E.2d 527 (intoxication); *Perez v. Fred Harvey, Inc.* (1950), 54 N.M. 339, 224 P.2d 524 (same); *Cleland Simpson Co. v. Workmen's Compensation Appeal Board* (1975), 16 Pa. Commw. 566, 332 A.2d 862 (insane delusion that claimant had broken several dates with assailant).) We have found no Illinois decisions holding squarely to the contrary. (*Cf. Belden Hotel Co. v. Industrial Com.* (1970), 44 Ill. 2d 253 (assailant was not a co-employee of victim; hence, the risk of his going insane was not a risk inherent in the employment).) Moreover, in *Health & Hospi-*

*tals Governing Com. v. Industrial Com.* (1975), 62 Ill. 2d 28, 33, this court indicated that a "neutral" assault of this general type is compensable without any further showing of a specific causal link between the employment and the assault. In that case, the claimant was injured when a co-employee with whom she had not previously spoken pulled a chair out from under her for no apparent reason: compensation was allowed on alternative theories of negligence and unexplained intentional assault. We note that petitioner in the instant case has succeeded in demonstrating a specific, nonpersonal motive for the assault on him, and thus presents a stronger case than the claimant in *Health & Hospitals,* who made no such showing.

We believe that assaults by co-employees in the workplace that are motivated by general racial or ethnic prejudice are best treated as compensable "neutral" risks arising out of the employment. Prejudice of this sort does not usually result in physical attacks in the world at large: it would be incorrect to say that people run the everyday risk of assault on the street or in public places because of their Mexican heritage. However, when an assault by a co-employee rooted solely in ethnic prejudice occurs in the workplace, as here, it is presumably the result of an irrational human impulse toward violence which is as much a part of the victim's work environment as a defective tool would be. The victim may be unaware of the danger, but encounter it he must if the work to which he is assigned is to be completed. It is legitimately a hazard presented by the work. This is particularly true in our polyglot society in which employers are now required by Federal law to hire qualified racial minorities. (42 U.S.C. sec. 2000e—2(a) (1976); see *United Steelworkers of America v. Weber* (1979), 443 U.S. 193, 61 L. Ed. 2d 480, 99 S. Ct. 2721.) With more minorities in the workplace, the potential for ethnic or racial fric-

tion is likely to increase. It would be anomalous for the law to address the problems of bigotry and lack of opportunity in society by requiring employers to hire qualified members of minority groups while not also requiring them to make the workplace as safe for minorities so hired as for other workers. (See Ill. Rev. Stat. 1977, ch. 48, par. 851 (declaration of public policy referring to the need to utilize the productive capacities of all individuals to the fullest extent possible regardless of ancestry and to insure that workers have resources sufficient to maintain a reasonable standard of living without resort to public charity).) We believe that, in the absence of anything that would personalize the incident, a bigoted and violence-prone co-worker is as much a risk inherent in employment in an integrated or ethnically mixed workplace as a defective machine or ceiling might be.

Respondent asserts that employers in Illinois are not insurers of the safety of their employees at all times and argues that to affirm the decision of the circuit court here would be equivalent to accepting the positional-risk doctrine of compensability, a doctrine which has been rejected by this court. (*Campbell "66" Express, Inc. v. Industrial Com.* (1980), 83 Ill. 2d 353; *Spiller v. Industrial Com.* (1928), 331 Ill. 401; see 1 A. Larson, Workmen's Compensation sec. 11.40 (1978).) We do not agree that an affirmance here means adoption of the positional-risk doctrine. That doctrine holds that an injury may be compensable whenever it was suffered on the work premises during work hours, regardless of whether the conditions or nature of the employment increased or contributed to the risk which led to the injury. (*Campbell "66" Express, Inc. v. Industrial Com.* (1980), 83 Ill. 2d 353, 355.) Taken to its extreme, it would render compensable an injury resulting from a personal dispute or a natural disaster common to the world at large, once the claimant shows that the employment caused him to occupy what

turned out to be a place of danger. (1 A. Larson, Workmen's Compensation sec. 10.00 (1978).) Neither our rejection of that sweeping doctrine, nor our continued adherence to the maxim that injuries are not compensable if they arise out of a personal dispute or from a risk common to people generally, requires us to deny compensation in this case.

For the foregoing reasons, we believe that the circuit court correctly confirmed the order of the Industrial Commission and that no further findings of fact are necessary. The decision of the circuit court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE RYAN, dissenting:

The first and most glaring error in the opinion of my colleagues is that it misconstrues the nature of the review of the case. The decision of the Industrial Commission that must now be reviewed *did not* hold in favor of the claimant, but found that the claimant's injuries *did not* arise out of and in the course of employment. However, the last paragraph of the opinion treats the case as one in which the Industrial Commission had found in favor of the claimant. The award of the Industrial Commission which the last paragraph of the opinion embraces was made only after the circuit court had reversed the original finding of the Commission and remanded the case. Therefore, the test that must now be applied by this court is whether that original finding in favor of the *employer* is against the manifest weight of the evidence.

It is well established that the resolution of disputed questions of fact is primarily the function of the Industrial Commission, which must hear and judge the credibility of the witnesses, sift the evidence, determine where the preponderance lies, and then, upon such determination, render its decision. On review, the function of this court is limited to a determination of whether the

findings of the Commission are against the manifest weight of the evidence. If the evidence is conflicting or permits the reasonable drawing of different inferences, we will not set aside the decision solely because we might have made a finding different from that made by the Commission or because we might have drawn different inferences. These well-established principles were restated by this court in another assault case, *Convertors, Inc. v. Industrial Com.* (1975), 61 Ill. 2d 218, 223.

In our case, applying these principles, the original holding of the Industrial Commission that the injury did *not* arise out of and in the course of the employment must be affirmed unless that holding is against the manifest weight of the evidence. However, the opinion never mentions manifest weight of the evidence, nor does it apply that test to the finding of the Industrial Commission. Instead, after a philosophical discussion concerning bigotry, the opinion adopts a new theory of recovery in Illinois, the "neutral assault" theory. However, even to bring this case within this new theory, it is necessary to expand it into a new area. Usually, this theory of recovery has been applied to assaults by drunks and lunatics, and "assaults which are in essence equivalent to blind or irrational forces." (1 A. Larson, Workmen's Compensation sec. 11:31, at 3—224 (1978).) The opinion acknowledges that the "neutral assault" theory was suggested by Professor Larson's text on workmen's compensation (1 A. Larson, Workmen's Compensation sec. 11:31 (1978)). It acknowledges, however, that Larson's treatise cites no case in which the assault was motivated solely by ethnic prejudice and that there have been no such cases in Illinois. Thus, not only does the opinion make new law in Illinois, but it extends the "neutral assault" theory, upon which it rests, to a class of cases in which it has not previously been applied.

In sum, the majority simply does not agree with the

findings of the Industrial Commission and the inferences it has drawn and has taken it upon itself to devise this new theory of recovery to permit claimant to recover. To accommodate this new theory, the majority makes its own findings of fact and draws its own inferences and concludes that the injury was caused by the ethnic prejudice of the assailant and that the danger of injury from such prejudice was also peculiar to the employment and not shared by the public at large.

The holding of the majority is based on a theory entirely different from that on which the case was tried. The claimant's case is based on the contention that the assault was incidental to the employment because it stemmed from problems the assailant had been having with the employer's faulty generator. The assailant had stated his dislike for Mexicans and had also stated that this generator must have been made in Mexico. Claimant's theory of the case was that the assailant's frustration with the faulty generator culminated in his attack, thus making the assault work related. This was claimant's theory of recovery before the Industrial Commission and in this court. The Commission did not agree and held against the claimant.

The opinion relies on *dicta* in *Health & Hospitals Governing Com. v. Industrial Com.* (1975), 62 Ill. 2d 28, as allowing compensation on the theory of unexplained intentional assault. I wish to point out that in that case the *Industrial Commission had awarded compensation* and on review this court affirmed that award. In *Schroeter v. Industrial Com.* (1976), 62 Ill. 2d 284, this court noted that the *dicta* in the *Health & Hospitals* case should not be construed as permitting an award in every instance where the record fails to demonstrate unambiguously that the motive for the assault was based on personal reasons. Again relying on *Schroeter*, the court stated that it is the Commission's function to consider

the propriety of the award and that this court will not substitute its judgment for that of the Commission unless the findings are contrary to the manifest weight of the evidence.

*Laboy v. Industrial Com.* (1978), 74 Ill. 2d 18, is another case in which the claimant was assaulted by a co-employee and the assault occurred on the employer's premises. The Industrial Commission *denied* recovery and this court affirmed. In that case there was evidence which would have supported a conclusion that the assailant was angry because of his work and thus the assault was work related. He stated that he would not do the work he was assigned to do. He threw boxes and cans on the floor and he called the claimant, with whom he was assigned to work, a bastard. Throughout the course of the day, heated exchanges occurred between the claimant and the assailant and there were instances of physical combat. After work in the washroom, the assailant struck the claimant, injuring him. However, there was also some evidence that there had been a dispute between the two concerning lottery tickets during the lunch break. This court again deferred to the finding of the Industrial Commission that the injury did not arise out of employment since there was evidence from which such an inference could legitimately be drawn. These co-employee assault cases consistently have held that the claimant must prove not only that the assault occurred in the course of the employment, but also that it arose out of the employment. These cases also hold that the court will not reverse the holding of the Industrial Commission on this question unless it is against the manifest weight of the evidence. Above all, we will not substitute our conclusions and inferences for those of the Commission simply because we may disagree.

The majority opinion in our case makes a finding that just does not conform to the facts of life. It states:

"Prejudice of this sort does not usually result in physical attacks in the world at large: it would be incorrect to say that people run the everyday risk of assault on the street or in public places because of their Mexican heritage." 95 Ill. 2d at 174.

I do not know the source of this amazing insight. I dare say, however, that there are thousands who are capable of disproving this "verity" by a display of their scars and bruises. The assailant could just as readily have given vent to his prejudice by whacking the claimant over the head with a pool cue in a pool hall, or with a beer bottle in a tavern, or by assaulting him in any public place where they would have been brought into close proximity. In addition to being contrary to the facts of life, this statement is obviously a finding that was not made by the Industrial Commission. This constitutes an independent finding of fact and drawing of inferences and is not a review of the findings of the Commission.

Finally, insofar as assaults by co-employees are concerned, the majority opinion, in spite of its protestations to the contrary, has fairly well established the positional-risk doctrine in Illinois. It essentially eliminates the necessity of proving that the assault arose out of the employment if it occurred in the course of the employment.

I dissent.

UNDERWOOD and MORAN, JJ., join in this dissent.