Anna M. JUAREZ, Plaintiff–Appellant,

v.

**AMERITECH MOBILE COMMUNICATIONS, INCORPORATED, Defendant–Appellee.**

No. 90–3230.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1991.

Decided Feb. 18, 1992.

---

318

## I.

Anna Juarez was hired by AMCI on May 27, 1986, as administrative assistant to AMCI's treasurer, Richard M. Slavin. Her job duties for Slavin included typing, answering phones, scheduling meetings and preparing expense accounts. She also performed secretarial duties as needed for various other AMCI employees. One of these other employees was Peter Shkrutz, AMCI's assistant treasurer.

Between late June, 1986, and July 9, 1986, Shkrutz subjected Juarez to increasingly offensive acts of sexual harassment, the sordid details of which are irrelevant to this appeal. Juarez did not report the harassment; the only person at AMCI to whom she spoke about Shkrutz's behavior was Sue Martinez, an accounts payable clerk with whom Juarez had become friendly. Martinez kept the information to herself until July 9, when she went to Kimmieth Bettendorf, the accounts payable supervisor, and told her about the sexual harassment.

The next morning, Bettendorf met with Marsha Rybski, a general manager of human resources for AMCI, and informed Rybski that an "unnamed party" at AMCI was being sexually harassed. Rybski told Bettendorf that the unnamed party should file a formal complaint and that the offender would be stopped. She also asked Bettendorf to assure the party that filing a complaint would in no way jeopardize her job. Bettendorf related Rybski's advice to Juarez. In addition, Juarez claims that Bettendorf urged her to report Shkrutz because he was a "pervert," who had "bothered" other employees in the past. Later that day, Juarez met with Rybski and told Rybski about the incidents involving Shkrutz. Juarez refused, however, to file a formal complaint, despite Rybski's assurances that doing so would not affect her continued employment at AMCI.

On Monday, July 14, Juarez met with John McClelland, director of human resources for AMCI, and filed a formal complaint of sexual harassment against Shkrutz. McClelland commenced an investigation of the allegations that afternoon.

Walter P. Maksym (argued), Oak Brook, Ill., Richard L. Lucas, Scott T. Ferrill, Addison, Ill., for plaintiff-appellant.

Howard E. Gilbert, Michael E. Gilbert, Gilbert & Associates, Skokie, Ill., James W. Gladden, Jr., David B. Ritter (argued), Barry A. White, Mayer, Brown & Platt, Chicago, Ill., for defendant-appellee.

Before CUDAHY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Plaintiff Anna M. Juarez brought this action against her former employer, Ameritech Mobile Communications, Inc. ("AMCI"), seeking to hold AMCI liable for the sexual harassment inflicted upon her by another AMCI employee, Peter Shkrutz. The district court granted summary judgment for AMCI on all counts, and Juarez appeals. 746 F.Supp. 798. We affirm.

On July 18, McClelland and Slavin had a meeting with Shkrutz at which Slavin handed Shkrutz a memorandum summarizing the results of the investigation and informed him that he was suspended for one week without pay. Shkrutz denied the allegations and protested the suspension. In December of 1986 he voluntarily terminated his employment with AMCI and moved to New York.

Juarez experienced no further sexual harassment by Shkrutz or any other AMCI employee after the filing of her complaint. Nevertheless, Juarez's work performance failed to live up to expectations. Between July and December a number of different AMCI employees for whom Juarez worked advised Slavin about Juarez's performance deficiencies. Slavin developed specific performance objectives for Juarez in both August and December, which Juarez failed to meet. On January 5, 1987, Juarez was terminated.

Juarez filed this suit almost two years later, on January 3, 1989.[1] Juarez claimed, first, that AMCI was liable under Title VII of the Civil Rights Act of 1964 for not preventing Shkrutz's sexual harassment. She also alleged that AMCI had violated Title VII because it had terminated her in retaliation for her complaints of sexual harassment. Finally, Juarez claimed that AMCI was liable under state law for invasion of privacy and intentional infliction of emotional distress. The district court granted summary judgment for AMCI on all counts.

We review *de novo* the district court's grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only if, drawing all reasonable inferences in favor of the nonmoving party, we conclude that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *New Burn-ham Prairie Homes, Inc. v. Burnham*, 910 F.2d 1474, 1477 (7th Cir.1990).

## II.

### A. *Sexual Harassment*

Employers are not strictly liable under Title VII for sexual harassment engaged in by their employees. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 69–70, 106 S.Ct. 2399, 2406–07, 91 L.Ed.2d 49 (1986); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 420 (7th Cir.1989). An employer is liable for such harassment only "if the employer knew or should have known about an employee's acts of harassment and fails to take appropriate remedial action." *Regal Tube*, 881 F.2d at 421 (citing *Meritor Savings Bank*); *see also North v. Madison Area Ass'n for Retarded Citizens—Developmental Corp.*, 844 F.2d 401, 407 (7th Cir.1988). The district court concluded that Juarez could not meet this standard "because there is no genuine dispute that AMCI neither knew nor should have known about Mr. Shkrutz's acts of harassment, and because once informed of his conduct AMCI took remedial action reasonably calculated to prevent further harassment." Memorandum Opinion and Order at 13.

Juarez argues on appeal that AMCI *did* have knowledge of prior sexual harassment by Shkrutz on which it failed to act. She bases this argument on Bettendorf's deposition testimony that Bettendorf had heard about other female employees of Ameritech being "bothered"—that is, "asked out"—by Peter Shkrutz. (Bettendorf Dep. at 21.)[2] This testimony, however, does not establish knowledge on the part of AMCI. Even if we assume that the vague, second-hand information possessed by Bettendorf constituted "knowledge" on her part that Shkrutz had engaged in sexual harassment, that knowledge cannot be imputed to AMCI.

---

1. Peter Shkrutz was originally named as a defendant in this suit. However, he was dismissed from the action in November of 1989 because Juarez failed to serve him with process in a timely manner.

2. At Bettendorf's deposition the court reporter recorded Bettendorf's name as Kimieth Ruthford.

In *Meritor Savings Bank*, the Supreme Court stated that in determining whether an employer is liable for sexual harassment committed by an employee, the lower courts should "look to agency principles for guidance." 477 U.S. at 72, 106 S.Ct. at 2408. Knowledge of an agent is imputed to her corporate principal only if the agent receives the knowledge while acting within the scope of her authority *and* the knowledge concerns a matter within the scope of that authority. *Evanston Bank v. Conticommodity Services, Inc.*, 623 F.Supp. 1014, 1034 (N.D.Ill.1985); Restatement (Second) of Agency § 275 and comment a (1958). "Further, for knowledge to be imputed, the agent must have not just a duty in relation to the subject matter, but a duty to speak to his principal about the specific item of knowledge." 623 F.Supp. at 1035 (citing Restatement (Second) of Agency § 275 comment c). In the case at bar, Bettendorf was employed by AMCI as an accounts payable supervisor. Although she was technically in a managerial position, she supervised only one employee (Martinez), and had no involvement with the Human Resources Department, which deals with claims of sexual harassment. Nor did she have any supervisory authority over Shkrutz. And Juarez does not allege that AMCI's sexual harassment policy itself imposed a duty on Bettendorf to report suspected instances of sexual harassment. In short, even if we assume that Bettendorf "knew" that Shkrutz had engaged in possibly harassing behavior, that knowledge did not concern a matter within the scope of her authority as an accounts payable supervisor. Thus, the district court did not err in concluding that AMCI did not have knowledge of any sexual harassment by Shkrutz prior to Juarez's complaint.

## B. *Retaliatory Discharge*

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee because that employee has "made a charge" under Title VII. 42 U.S.C. § 2000e–3(a) (1988). In *Collins v. Illinois*, 830 F.2d 692 (7th Cir. 1987), this Court set forth the elements of a prima facie case under this provision:

> "To establish a prima facie case of retaliat[ion], the plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) that [sic] there is a causal link between the protected expression and the adverse action."

*Id.* at 702 (quoting *Jennings v. Tinley Park Community Consolidated District No. 146*, 796 F.2d 962, 966–67 (7th Cir. 1986)). The district court found that, based on the undisputed facts of this case, Juarez could not prove that she was terminated because of her sexual harassment complaint rather than for poor work performance. Juarez challenges that conclusion, arguing that a genuine dispute exists as to the credibility of AMCI's purported reason for her termination because "[t]he timing of the criticisms [of her work performance], combined with the undisputed fact that many of the purported criticisms were never shown to or brought to [her] attention, renders those criticisms suspect." Appellant's Br. at 27.[3]

The timing of the complaints, standing alone, does not create a genuine issue as to a causal connection between the filing of Juarez's sexual harassment complaint and her termination almost six months later. *Cooper v. North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986). Nor does the fact that some of the criticisms of Juarez's performance were not brought to her attention demonstrate the existence of a genuine issue for trial. The undisputed facts make clear that Slavin fully informed Juarez of the deficiencies in her performance and gave her every opportunity to correct them. *Compare Mays v. Williamson & Sons Janitorial Services, Inc.*, 591

---

**3.** Juarez also argues that AMCI may not rely on her "declining work performance" as a basis for terminating her because AMCI's "failure to act" against Shkrutz's sexual harassment caused the decline in work performance. Because we find that AMCI did not "fail to act," but rather took prompt remedial action once it became aware of Shkrutz's conduct, we need not address this claim.

F.Supp. 1518, 1520 (E.D.Ark.1984) (plaintiff had no notice of allegations of misconduct and poor work performance contained in memoranda written by subject of her sexual harassment complaint, and vigorously disputed the integrity of those documents). Further, Juarez does not dispute that she made mistakes in performing her duties at AMCI. She presents no evidence to suggest that the AMCI employees who complained of her deficient performance were lying or that their motives in making those complaints were improper. In order to demonstrate a genuine issue of material fact in opposition to a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, the nonmoving party "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in opinion). "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* Juarez has failed to adduce evidence that would allow a rational trier of fact to conclude that she was fired by AMCI because of her sexual harassment complaint.

### C. *Invasion of Privacy*

■ Juarez alleged in her complaint that Shkrutz's acts of sexual harassment had "violated [her] right to privacy ... and invaded her seclusion, solitude and private affairs." Complaint at 9. The district court found that this claim was barred by the Illinois statute of limitations and entered summary judgment in favor of AMCI. On appeal, Juarez argues that the district court erred in holding that her invasion of privacy claim was time-barred because the Illinois statute of limitations was tolled by her timely filing of a discrimination charge with the Equal Employment Opportunity Commission.

Juarez offers no basis for tolling the limitations period on this claim under Illinois law. Rather, she argues that her filing of an EEOC charge should toll the statute of limitations on the state-law claim as a matter of national policy. She contends that failure to toll the state statute of limitations in cases such as this one will frustrate national policy by undermining the "investigation and conciliation" role of the EEOC. Appellant's Br. at 30. The Supreme Court rejected a very similar argument in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), which held that the filing of a charge with the EEOC does not toll the statute of limitations applicable to 42 U.S.C. § 1981. The Court recognized that requiring plaintiffs to file a lawsuit within the section 1981 limitations period could frustrate the goals of Title VII's administrative procedures. Nevertheless, the Court held that this possibility was not a sufficient reason to allow tolling, because it was the "natural effect[ ]" of Congress' decision to retain Title VII and section 1981 as separate and independent remedies. *Id.* at 461, 95 S.Ct. at 1720.

Similarly, the possibility that requiring plaintiffs to file their state-law claims within applicable limitations periods will deter recourse to Title VII's administrative procedures is a "natural effect" of Congress' decision to make Title VII's remedies separate and independent of those available under state law. As the *Johnson* Court observed:

> Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and applicable state and federal statutes."

*Id.* at 459, 95 S.Ct. at 1719 (quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974)). The state-law claim of invasion of privacy in this case is clearly separate from, and independent of, Title VII.

The state-law claim does not vindicate Juarez's right to be free from discriminatory treatment based on her sex, but rather her right to be free from "offensive or objectionable" intrusion into her seclusion. *Mucklow v. John Marshall Law School,* 176 Ill.App.3d 886, 126 Ill.Dec. 314, 319, 531 N.E.2d 941, 946 (1988). Thus, the time for filing that claim is not tolled by the filing of a discrimination charge with the EEOC. *Johnson v. Artim Transportation System, Inc.,* 826 F.2d 538, 550 (7th Cir. 1987) (hybrid claim against employer under Labor Management Relations Act and against union for breach of duty of fair representation was independent of claim under Title VII, so that time for filing the hybrid claim was not tolled by filing of claim with EEOC); *Arnold v. United States,* 816 F.2d 1306, 1313 (9th Cir.1987) (limitations period for state-law claims of assault, false imprisonment, intentional infliction of emotional distress and battery not tolled by filing of Title VII charge).

### D. *Intentional Infliction of Emotional Distress*

The district court found that Juarez could not prevail on her claim for intentional infliction of emotional distress because that claim is preempted by the Illinois Workers Compensation Act, 1989 Ill.Rev. Stat. ch. 48, ¶¶ 138.1 *et seq.* Juarez argues that this finding is in error because exposure to sexual harassment is not a risk inherent in one's employment, and therefore injuries resulting from sexual harassment cannot arise from employment, as required by the IWCA.[4]

 The Illinois Supreme Court has defined an injury "arising out of" one's employment as "one which has its origin in some risk so *connected with, or incidental to,* the employment as to create a causal connection between the employment and the injury." *Orsini v. Industrial Comm'n,* 117 Ill.2d 38, 109 Ill.Dec. 166, 169, 509 N.E.2d 1005, 1008 (1987). The

injury does not arise out of the employment if it "results from a hazard to which the employee would have been equally exposed apart from the employment." *Id.* 109 Ill. Dec. at 169–70, 509 N.E.2d at 1008–09.

 No Illinois court has addressed the question whether an injury resulting from sexual harassment by a co-employee is one that "arises out of" employment. However, the Illinois Supreme Court has held that "assaults by co-employees in the workplace that are motivated by general racial or ethnic prejudice are best treated as compensable 'neutral' risks arising out of employment." *Rodriguez v. Industrial Comm'n,* 95 Ill.2d 166, 68 Ill.Dec. 928, 932, 447 N.E.2d 186, 190 (1982). In reaching this conclusion, the court analogized such attacks to assaults by "insane, drunken or irresponsible co-employees." *Id.* 68 Ill.Dec. at 931, 447 N.E. at 189. A majority of states holds that such assaults are compensable on the theory that

> when a co-employee suffers from a delusion or some similar condition which causes him to erupt into violence, his presence in the workplace in his state is a condition under which his victim is employed and must perform his work, … and in that sense is a risk peculiar to the employment and not shared by the world at large.

*Id.* Similarly, an assault by a co-employee motivated solely by ethnic prejudice "is presumably the result of an irrational human impulse toward violence which is as much a part of the victim's work environment as a defective tool would be." *Id.* 68 Ill.Dec. at 932, 447 N.E. at 190. Thus, "a bigoted and violence-prone co-worker is as much a risk inherent in employment in an integrated or ethnically mixed workplace as a defective machine or ceiling might be." *Id.*

 A sexually harassing co-employee is similarly a "risk inherent in employment." Sexual harassment is *defined* as

---

**4.** In order to avoid the bar of the Workers Compensation Act, a plaintiff suing her employer must "prove either that the injury (1) was not accidental, (2) did not arise from … her employment, (3) was not received during the course of employment or (4) was noncompensable under the Act." *Collier v. Wagner Castings Co.,* 81 Ill.2d 229, 41 Ill.Dec. 776, 780, 408 N.E.2d 198, 202 (1980).

sexual misconduct that " 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Meritor Savings Bank,* 477 U.S. at 65, 106 S.Ct. at 2404 (quoting 29 CFR § 1604.11(a)(3)). Under such circumstances, the harassment-prone co-employee clearly is "as much a part of the victim's work environment as a defective tool might be."

Further, the Illinois Supreme Court has held that emotional distress injuries inflicted by a co-employee may arise from employment. In *Collier v. Wagner Castings Co.,* 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198 (1980), the plaintiff alleged that he suffered emotional distress as a result of the company medical attendant's extreme indifference when the plaintiff was stricken at work with "classic signs and symptoms of impending cardiac arrest." *Id.* 41 Ill.Dec. at 778, 408 N.E. at 200. The court concluded that these injuries arose out of the plaintiff's employment because

> [t]he qualitative increase in the risk of the infliction of emotional distress in the situation here was inextricably connected to his employment. In a normal situation plaintiff's choice of doctor and the consequent likelihood that the doctor chosen would inflict emotional distress is a risk personal to him. Here, however, a qualitative increase in the risk of harm results from the company's employment of a medical attendant who is clothed with the apparent power to prevent, in certain circumstances, an employee's receipt of medical care at company expense.

*Id.* 41 Ill.Dec. at 780, 408 N.E. at 202. In the case at bar, the undisputed facts establish that there was a qualitative increase in the risk of the infliction of emotional distress "inextricably connected to" Juarez's employment. The fact that Shkrutz's actions occurred in the course of Juarez's employment, rather than on a street or in a restaurant, limited Juarez's choice of responses to those actions. Courts have recognized the significance of the inherent power imbalance between supervisor and subordinate in the context of sexual harass-

ment. *Meritor Savings,* 477 U.S. at 64, 106 S.Ct. at 2404 ("Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminates' on the basis of sex."). Juarez's subordinate status made her vulnerable to suffering emotional distress from the unwanted advances of a management-level employee such as Shkrutz. Therefore, Juarez's injuries arose from her employment, and her claim for intentional infliction of emotional distress is barred by the Illinois Workers' Compensation Act.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.