In the

# United States Court of Appeals

### For the Seventh Circuit

_____

Nos. 16-4113 & 17-1958

MARTYN BAYLAY,

*Plaintiff-Appellant,*

*v.*

ETIHAD AIRWAYS P.J.S.C., SARAVDEEP MANN,
909 NORTH MICHIGAN AVENUE CORPORATION, and
LHO MICHIGAN AVENUE FREEZEOUT, LLC,

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CV 8736 — **Joan B. Gottschall**, *Judge.*

_____

ARGUED NOVEMBER 1, 2017 — DECIDED FEBRUARY 7, 2018

_____

Before MANION, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* In 2013, Saravdeep Mann attacked
his coworker, Martyn Baylay, with a bronze hotel decoration.
The two men, members of a flight crew employed by Etihad
Airways, were at a Chicago hotel for the night on a layover.

Baylay sued Etihad, Mann, and the hotel's corporate entities in federal district court. The court dismissed all of Baylay's claims against Etihad on the basis that the claims should be heard by the Illinois Workers' Compensation Commission instead. The court entered an order allowing an immediate appeal of that decision, which Baylay filed on December 9, 2016 (No. 16-4113). A few months later, the district court dismissed Baylay's remaining claims. It reasoned that it had no original jurisdiction over the claims and declined to exercise its supplemental jurisdiction. Baylay filed his notice of appeal of that decision on May 5, 2017 (No. 17-1958). The appeals have been consolidated and are before us now. We affirm the dismissal of Baylay's claims.

## I. BACKGROUND

The following facts are drawn from Baylay's second amended complaint. *See Veseley v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014) (when reviewing a 12(b)(6) motion, we accept the facts in the complaint as true); *see also Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 739 (7th Cir. 2016) (when reviewing a dismissal for lack of subject-matter jurisdiction, we accept the facts in the complaint as true).

Etihad Airways is a public joint stock company established by Emiri Decree and incorporated in the Emirate of Abu Dhabi, United Arab Emirates. Martyn Baylay, a British citizen, worked as a pilot for Etihad in 2013.

That October, Etihad assigned Baylay to a flight crew that also included Saravdeep Mann. The crewmembers flew from Abu Dhabi to Chicago. After arrival, Etihad arranged for the

crewmembers' transportation to The Westin on Michigan Avenue in Chicago for an overnight layover. Etihad paid for the accommodations.

The crewmembers drank pre-dinner cocktails together that night, where Mann consumed a significant amount. It appeared to Baylay that he had imbibed before meeting the group, too. At dinner, Mann downed even more alcohol and then expressed anti-American and anti-British views while emphasizing his distaste for the British by placing his hands around Baylay's throat. Mann left the restaurant without paying his bill and without his coat. The crewmembers settled Mann's bill, and Baylay offered to take Mann's coat and return it the next day.

Back at the hotel, Baylay heard a knock on the door of his hotel room and saw Mann standing outside his room. Thinking Mann was there to apologize for his earlier actions and collect his coat, Baylay opened the door. Mann struck him on the head and leg with a bronze hotel decoration. During the attack, Mann threatened Baylay, saying, "I'm going to kill you. You f*cking British bastard." Baylay managed to escape, took the elevator to the lobby of the hotel, and was then transported to Northwestern Memorial Hospital. Mann was arrested and transported to the Chicago Police Department.

Mann left the United States with Etihad's help after posting bond on October 14. He never returned, criminally violating his bond.

Baylay filed the second amended complaint on February 25, 2016, in federal district court. He sued Mann; Etihad Airways; 909 North Michigan Avenue Corporation and LHO

Michigan Avenue Freezeout, LLC—the Westin's corporate entities; and United Security Services, Inc.—the company that provided security for the Westin at the time of the incident. United Security Services was later voluntarily dismissed from the case.

Against Etihad, Baylay brought state-law claims of negligent retention, negligence, and willful and wanton conduct. Against Mann, he brought state-law claims of negligence and willful and wanton conduct. And against the Westin's corporate entities, Baylay brought a state-law claim of negligence.

In March 2016, Etihad filed a 12(b)(6) motion to dismiss Baylay's claims against it. The district court granted the motion, concluding that Baylay's state-law claims against his employer were barred by the exclusivity provisions of the Illinois Workers' Compensation Act ("the IWCA"). If Baylay wanted to pursue claims against his employer arising from the incident with Mann, he needed to do so in front of the Illinois Workers' Compensation Commission ("the Commission"). The court entered an order providing for an immediate appeal of this decision, which Baylay timely filed on December 9, 2016 (No. 16-4113).

In early 2017, the district court asked the parties to submit jurisdictional statements addressing whether the district court still had jurisdiction over the case after Etihad's dismissal. After reviewing the submitted statements, the district court dismissed Baylay's remaining claims without prejudice on April 7, 2017. It concluded that it had no original jurisdiction over the claims and declined to exercise its supplemental jurisdiction. With all of the plaintiff's claims dismissed, the district court terminated the civil case. Baylay filed a timely notice of appeal on May 5, 2017 (No. 17-1958).

We now consider the merits of both appeals.

## II. ANALYSIS

Our central focus in this appeal is on the power and propriety of the federal courts to hear Baylay's claims.

First, Baylay contends that the Foreign Sovereign Immunities Act ("the FSIA" or "the Act") requires any claim against a foreign state to be adjudicated in a court. Thus, the district court erred when it concluded that Baylay's claims against Etihad should be heard by the Commission, an administrative body. In the alternative, Baylay argues that the IWCA does not apply to his claims against Etihad, so the district court was nonetheless the proper forum for his claims.

Second, Baylay maintains that the district court had diversity jurisdiction over his remaining claims after Etihad's dismissal. In the alternative, he argues that the district court should have exercised supplemental jurisdiction over the claims.

We take—and reject—each of Baylay's arguments in turn.

### A. Baylay's claims against Etihad must be resolved by the Illinois Workers' Compensation Commission.

Baylay believes that the Foreign Sovereign Immunities Act vests the power to decide claims against foreign states in the judicial branch alone. Thus, he argues that the Commission cannot adjudicate his claims against Etihad. In other words, he argues that the FSIA preempts the IWCA. Alternatively, he contends that the IWCA doesn't apply to his claims against Etihad, so the district court should have remained the arbiter of his claims.

The district court rejected these arguments. We review a 12(b)(6) dismissal *de novo*, viewing the allegations in the light most favorable to the nonmovant, and we are similarly unpersuaded. *See Veseley*, 762 F.3d at 664.

    1.   *The FSIA does not preempt the IWCA, so the Commission may adjudicate applicable claims.*

The Foreign Sovereign Immunities Act "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). When a plaintiff sues a foreign state, the Act presumes immunity and then creates exceptions to the general principle. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1320 (2017). The parties agree that Etihad is a foreign state and that an exception to immunity exists. The parties disagree, however, about whether the Act requires claims against a foreign state to be heard by a court after that court has concluded that the foreign state is not immune from suit.

"A foreign state shall not be immune from the jurisdiction *of courts* of the United States or of the States … ." 28 U.S.C. § 1605(a) (emphasis added). Baylay believes that this language vests the power to resolve claims against foreign states in the judiciary alone. Thus, even though the IWCA might mandate that certain claims against employers must be adjudicated first in front of the Commission, the FSIA preempts the IWCA and requires claims against foreign-state employers to remain in a court.

But by reading that provision in isolation, Baylay misconstrues the Act as a whole. Congress intended the FSIA to transfer *immunity determinations* in cases against foreign states

from the executive branch to the judicial branch. *See* 28 U.S.C. § 1602 ("Claims of foreign states to immunity should henceforth be decided by courts."); *Frolova v. Union of Soviet Socialist Republics*, 558 F. Supp. 358, 361 (N.D. Ill. 1983), *aff'd*, 761 F.2d 370 (7th Cir. 1985) (noting that one of the four main objectives of FSIA was to ensure that immunity would be strictly a judicial determination); *Nat'l Airmotive Corp. v. Gov't & State of Iran*, 499 F. Supp. 401, 406 (D.D.C. 1980) ("A primary purpose of th[e] Act was to depoliticize sovereign immunity decisions by transferring them from the Executive to the Judicial Branch."). Thus, the Act preempts any other state or federal law that accords *immunity* from suit. *See Samantar v. Yousuf*, 560 U.S. 305, 313 (2010). But it is not intended—and has not been construed—to affect the governing substantive law. *First Nat'l City Bank v. Banco Para El Comercia Exterior de Cuba*, 462 U.S. 611, 620 (1983).

Instead, the Act imposes liability on the foreign state "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. "[W]here state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *First Nat'l*, 462 U.S. at 622 n.11. Thus, if the foreign state is not immune from suit, "plaintiffs may bring state law claims that they could have brought if the defendant were a private individual." *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009). Applying the state-law principles that govern that state-law claim, rather than constructing a set of federal common-law principles, better serves the congressional intent behind § 1606. *Cf. id.* (concluding that the application of the forum state's choice-of-law principles, rather than federal common-law ones, better effectuates Congress's intent.). "In this way, 'the

FSIA … operates as a "pass-through" to state law principles.'"
*Id.* (omission in original) (quoting *Pescatore v. Pan Am. World
Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996)).

In sum, Congress vested the courts with the sole power to
determine immunity from suit to assure litigants that immun-
ity decisions were made in accordance with uniform and fair
legal principles, *see Republic of Austria v. Altmann*, 541 U.S. 677,
716–17 (2004), but it did not intend to disturb the substantive
law that applies to a claim against a foreign state if an excep-
tion to immunity applies.

The FSIA's mandates and purpose were served in this case:
the district court determined that Etihad was not immune
from suit and then looked to the IWCA to analyze how
Baylay's claims should proceed. The IWCA is certainly sub-
stantive law. Upon its passage by the Illinois legislature, the
IWCA eliminated employer liability for all common-law neg-
ligence claims and created a new scheme through which em-
ployees can be compensated for work-related injuries. Thus,
the district court was correct that the FSIA should not affect
the applicability and operation of the IWCA once the court
determined that Etihad was not immune from its employee's
claims.

We turn now to whether the district court erred in its anal-
ysis of the IWCA.[1]

---

[1] Neither party raises a choice-of-law objection to the district court's
application of Illinois law, so we need not concern ourselves with the cir-
cuit split on FSIA and choice of law. *See Thornton v. Hamilton Sundstrand
Corp.*, No. 12 C 329, 2013 WL 4011008, at *3 (N.D. Ill. Aug. 6, 2013).

2. *The IWCA's exclusivity provisions apply, so the Commission must hear the claims.*

The Illinois Workers' Compensation Act provides an administrative remedy for employees' injuries "arising out of and in the course of the[ir] employment." 820 Ill. Comp. Stat. 305/11. It "abrogates employer liability for all common law negligence claims," *Walker v. Doctors Hosp.*, 110 F. Supp. 2d 704, 714 (N.D. Ill. 2000), and provides the exclusive means by which an employee can recover against an employer for a work-related injury in Illinois, 820 Ill. Comp. Stat. 305/5(a), 305/11; *see also Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1225–26 (Ill. 1990). The exclusivity provisions (305/5(a) and 305/11) are "part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance." *Meerbrey*, 564 N.E.2d at 1225. Injured employees can recover for their injuries without establishing their employer's negligence but also "relinquish their rights to maintain common law actions against their employers." *Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1289 (N.D. Ill. 1994).

If an employer is sued in common law, the employer may raise the IWCA's exclusivity provisions as an affirmative defense. *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d. 951, 956 (N.D. Ill. 2002). If it establishes the elements of the affirmative defense, then the burden shifts to the plaintiff to show that his claims are not subject to the IWCA or its exclusivity provisions. *Id.* Here, Etihad raised the IWCA's exclusivity provisions as an affirmative defense in its 12(b)(6) motion to dismiss. Baylay responded that the IWCA did not apply so his common-law claims could remain in the district court rather than being sent to the Commission. The district court granted Etihad's motion.

On appeal, Baylay argues that the IWCA does not apply to his claims against Etihad for two reasons. First, he contends that it does not apply because Etihad does not meet the IWCA's definition of an employer. Because he raises this issue for the first time on appeal, we decline to consider its merits. *See, e.g.*, *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). Second, he asserts—as he did below—that the IWCA's exclusivity provisions do not apply to his claims against Etihad.

In order to show that the IWCA's exclusivity provisions do not apply, Baylay must demonstrate that his injury "(1) was not accidental, (2) did not arise from his … employment, (3) was not received during the course of employment, or (4) was noncompensable under the [IWCA]." *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 202 (Ill. 1980). We take each exception in turn.

First, Baylay's injuries were accidental within the meaning of the IWCA. An employee's claims of employer negligence and willful and wanton conduct fall within the definition of "accidental." *See Lannom v. Kosco*, 634 N.E.2d 1097, 1100–01 (Ill. 1994). This is true even if the claims arise from an intentional tort committed by a co-worker; the tort is "accidental" within the meaning of the IWCA because it is unexpected and unforeseeable from both the injured employee's and the employer's points of view. *Meerbrey*, 564 N.E.2d at 1226. To show that a coworker's intentional tort is *not* accidental, a plaintiff must establish that the coworker was the alter ego of the employer or that the employer commanded or expressly authorized the acts. *Id.* Baylay did not include an allegation of either in his complaint.

Second, Baylay's injuries arose out of his employment. The question of whether an injury arises out of the employment of traveling employees is answered differently than for other employees. *Kertis v. Ill. Workers' Comp. Comm'n*, 991 N.E.2d 868, 873 (Ill. Ct. App. 2013). "An injury sustained by a traveling employee"—one whose work requires him to travel away from his employer's office and for whom travel is an essential element of the employment—"arises out of his employment if he was injured while engaging in conduct that was reasonable and foreseeable." *Id.* Baylay, an Etihad pilot, was unquestionably a traveling employee. He sustained his injury while in his employer-paid hotel room on a layover when his fellow crewmember knocked on his door. That a coworker would knock on Baylay's door, and that Baylay would open the door, while the crew was staying at the hotel is both reasonable and foreseeable.

Third, Baylay conceded that he was injured during the course of his employment. (Appellant's Br. at 34–35; R. 111 at 11–12.)

And fourth, Baylay failed to establish that the Commission would not compensate him for his injuries. Assaults by coworkers in the workplace "that are motivated by general racial or ethnic prejudice are best treated as compensable 'neutral' risks arising out of the employment." *Rodriguez v. Indus. Comm'n*, 447 N.E.2d 186, 190 (Ill. 1982). In *Rodriguez,* an employee fractured his coworker's skull out of general hostility toward Mexicans and people of Mexican descent. *Id.* at 187–88. The attack was compensable because "the most [the victim] … brought to the workplace was his ethnic heritage, over which he of course had no control." *Id.* at 189. "[I]n the absence of anything that would personalize the incident, a

bigoted and violence-prone co-worker is as much a risk inherent in employment in an integrated or ethnically mixed workplace as a defective machine or ceiling might be." *Id.* at 190. In the present case, like in *Rodriguez*, Mann's attack was motivated by his hostility toward Baylay's national origin. And Baylay does not allege that he brought anything to the workplace other than his national origin that would personalize Mann's attack on him. Thus, Baylay failed to show that his injuries would not be compensated under the IWCA.

The district court properly granted Etihad's motion to dismiss. Though the dismissal was based on Etihad's affirmative defense, the defense was conclusively established by the complaint and Baylay's own concessions. *Arnold*, 215 F. Supp. 2d. at 956–57 (A 12(b)(6) dismissal based on an affirmative defense "is appropriate only where the defense is conclusively established by the complaint, concessions made by the plaintiff, or any other material appropriate for judicial notice."). All that was left of Baylay's suit after this dismissal (and the voluntary dismissal of United Security Services) were his claims against Mann and the Westin's corporate entities, which we turn to now.

> B. *The district court correctly concluded that it had no original jurisdiction over Baylay's remaining claims and appropriately declined to exercise its supplemental jurisdiction.*

The district court concluded that it had no original subject-matter jurisdiction over Baylay's remaining claims and declined to exercise supplemental jurisdiction over them. We review the court's legal determination regarding subject-matter jurisdiction *de novo, LM Ins. v. Spaulding Enters. Inc.*, 533

F.3d 542, 547 (7th Cir. 2008), but review its decision not to exercise supplemental jurisdiction for an abuse of discretion, *Hagan v. Quinn*, 867 F.3d 816, 820 (7th Cir. 2017).

Baylay contends that the district court had diversity jurisdiction over his claims against Mann and the Westin's corporate entities, but his argument has no merit. Baylay is a British citizen, and he is the only plaintiff in this cause. Mann is a foreign citizen, and the Westin's corporate entities are citizens of U.S. states. In cases where a foreign citizen alone is suing both a foreign citizen and a citizen of a U.S. state in diversity, a federal court has no original jurisdiction. 28 U.S.C. § 1332(a) does not grant it. *See Allendale Mut. Ins. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir. 1993) ("The point was not so much that there were foreigners on both sides," but "that there was no citizen on one side, which took it out of [28 U.S.C. § 1332(a)(3)]; and (a)(2), when read in light of (a)(3), does not permit a suit between foreigners and a mixture of citizens and foreigners."). Baylay's misreading of *Allendale* and *Tango Music, LLC v. Deadquick Music, Inc.*, 348 F.3d 244 (7th Cir. 2003), does not convince us otherwise. (Appellant's Br. at 40.)

The district court properly concluded that it had only supplemental jurisdiction over Baylay's remaining claims. Baylay claims that it should have continued to exercise that jurisdiction because, he says, it had original jurisdiction over third-party contribution claims that the Westin's corporate entities filed against Etihad in the wake of Etihad's dismissal as a primary defendant.[2]

---

[2] Though the district court inherently dismissed the third-party contribution claims when it dismissed Baylay's supplemental claims and terminated his civil suit, the propriety of that dismissal is not before us on

But even if Baylay is correct that the district court had original jurisdiction over those third-party contribution claims, district courts may decline to exercise supplemental jurisdiction over a claim when the supplemental claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). This is the case here. After Etihad's dismissal, Baylay's remaining claims included two state-law claims against Mann and a state-law claim of negligence against the Westin's corporate entities. The corporate entities' third-party contribution claims are entirely dependent on the resolution of the underlying state-law negligence claim against them. Thus, Baylay's state-law claims substantially predominate. The district court's decision to decline to exercise supplemental jurisdiction over them was not an abuse of discretion in light of 28 U.S.C. § 1367(c).

## III. CONCLUSION

The Foreign Sovereign Immunities Act does not affect the content of the governing substantive law. In Illinois, that governing substantive law—the IWCA—instructs courts to send to the Commission for adjudication any employee claim against his or her employer that falls within the purview of the IWCA. Baylay's claims against Etihad are covered by the IWCA. We AFFIRM the district court's dismissal of Baylay's claims in case number 16-4113.

The district court had only supplemental jurisdiction over Baylay's remaining claims against Mann and the Westin's corporate entities. It did not abuse its discretion in declining to

---

appeal. In fact, the Westin's corporate entities who filed the claims do not contest the dismissal.

exercise that jurisdiction. We AFFIRM the district court's dismissal of Baylay's claims in case number 17-1958.